MAGEN v. UNITED STATES.

Circuit Court of Appeals, Second Circuit.
February 14, 1928.

No. 211.

1. Criminal law ☞742(1), 745—Crebility of testimony and proper inferences to be drawn therefrom were for jury (Cr. Code, § 125 [18 USCA § 231]; Bankr. Act, § 29b [11 USCA § 52]).

In prosecution for testifying falsely in bankruptcy proceeding, in violation of Criminal Code, § 125 (18 USCA § 231), and Bankruptcy Act, § 29b (11 USCA § 52), credibility of the testimony and proper inferences to be drawn from it were for the jury.

2. Bankruptcy ☞494—Allegation of appointment of special commissioner, before whom defendant was charged with testifying falsely in bankruptcy proceeding, held sufficient (Bankr. Act, §§ 21a, 29b [11 USCA §§ 44, 52]; 18 USCA § 556; Cr. Code, § 125 [18 USCA § 231]).

In indictment charging defendant with falsely testifying in bankruptcy proceeding, in violation of Criminal Code, § 125 (18 USCA § 231), and Bankruptcy Act, § 29b (11 USCA § 52), allegation that "R. was appointed special commissioner in a hearing and examination held pursuant to provisions of section 21a of * * * Bankruptcy Act" held to mean that R. was appointed special commissioner in respect to hearing under Bankruptcy Act, § 21a (11 USCA § 44), and was sufficient, since defect, if any, was in matter of form only and should be disregarded, under Rev. St. § 1025 (18 USCA § 556).

3. Bankruptcy ☞235—Special commissioner could be appointed to conduct examination in bankruptcy proceeding at which defendant was charged with testifying falsely (Bankr. Act, §§ 21a, 29b [11 USCA §§ 44, 52]; Cr. Code, § 125 [18 USCA § 231]).

Special commissioner could be appointed in bankruptcy proceeding to conduct examination of bankrupt under Bankruptcy Act, § 21a (11 USCA § 44), at which defendant was charged with testifying falsely, in violation of Criminal Code, § 125 (18 USCA § 231), and Bankruptcy Act, § 29b (11 USCA § 52).

4. Bankruptcy ☞234—General order of reference in bankruptcy did not supersede examination before special commissioner previously appointed, at which defendant was charged with testifying falsely (Bankr. Act, §§ 21a, 29b [11 USCA §§ 44, 52]; Cr. Code, § 125 [18 USCA § 231]; General Order 12 of Supreme Court).

General order of reference in bankruptcy proceeding, before defendant testified before commissioner, did not supersede examination before special commissioner previously appointed to conduct examination, under Bankruptcy Act, § 21a (11 USCA § 44), at which defendant was charged with testifying falsely, in violation of Criminal Code, § 125 (18 USCA § 231), and Bankruptcy Act, § 29b (11 USCA § 52), since purpose of General Order 12 of Supreme Court is to relieve District Court in bankruptcy, and to set limits to powers of referee's court, and does not deprive District Court of original jurisdiction in such matters as may be brought before it.

5. Bankruptcy ☞235—Special commissioner, conducting examination at which defendant was charged with testifying falsely in bankruptcy proceeding, was not required to take oath (Bankr. Act, §§ 21a, 29b [11 USCA §§ 44, 52]; Cr. Code, § 125 [18 USCA § 231]).

Special commissioner, appointed by court to conduct examination under Bankruptcy Act, § 21a (11 USCA § 44), at which defendant was charged with having testified falsely, in violation of Criminal Code, § 125 (18 USCA § 231), and Bankruptcy Act, § 29b (11 USCA § 52), was not required to take oath.

6. Bankruptcy ☞235—Notary may administer oath to special commissioner appointed to conduct examination in bankruptcy proceeding (Bankr. Act, §§ 20, 21a [11 USCA §§ 43, 44]).

Under Bankruptcy Act, § 20 (11 USCA § 43), relating to oaths, notary public may administer oath to special commissioner appointed to conduct examination under section 21a (11 USCA § 44).

7. Indictment and information ☞125(19)—Indictment for testifying falsely in bankruptcy proceeding, in violation of Criminal Code and of Bankruptcy Act, held not bad for duplicity (Bankr. Act, §§ 21a, 29b [11 USCA §§ 44, 52]; Cr. Code, § 125 [18 USCA § 231]).

Indictment alleging that defendant testified falsely in hearing under Bankruptcy Act, § 21a (11 USCA § 44), before special commissioner, and with falsely testifying in bankruptcy proceeding, in violation of Criminal Code, § 125 (18 USCA § 231), and Bankruptcy Act, § 29b (11 USCA § 52), held not bad for duplicity, since reference to two sections, under each of which facts stated constituted crime, was mere surplusage.

8. Bankruptcy ☞495—Evidence held sufficient to sustain conviction for falsely testifying in bankruptcy proceeding (Cr. Code, § 125 [18 USCA § 231]; Bankr. Act, § 29b [11 USCA § 52]).

In prosecution for falsely testifying in bankruptcy proceeding, in violation of Criminal Code, § 125 (18 USCA § 231), and Bankruptcy Act, § 29b (11 USCA § 52), evidence held sufficient to sustain conviction.

**9. Criminal law ⟊655(5)—In prosecution for testifying falsely in bankruptcy proceeding, court's remarks in personal altercation with defendant's attorney held not to prevent fair trial (Cr. Code, § 125 [18 USCA § 231]; Bankr. Act, § 29b [11 USCA § 52]).**

In prosecution for falsely testifying in bankruptcy proceeding, in violation of Criminal Code, § 125 (18 USCA § 231), and Bankruptcy Act, § 29b (11 USCA § 52), where proof of guilt was substantially uncontradicted, and defendant's attorney was allowed to bring out on cross-examination any facts he might reasonably desire, and reliance of defense was on points of law rather than on facts, remarks of trial court in personal altercation between defendant's attorney and court, because of attorney's method of cross-examination, *held* not to prevent fair trial.

In Error to the District Court of the United States for the Eastern District of New York.

Herbert Magen was convicted of falsely testifying in a bankruptcy proceeding, in violation of Criminal Code, § 125 (18 USCA § 231), and Bankruptcy Act, § 29b (11 USCA § 52), and he brings error. Affirmed.

See, also, 18 F.(2d) 288.

The indictment charged that the defendant committed the crime of perjury, and set forth that a voluntary petition in bankruptcy was filed in the Eastern district of New York praying that H. Magen Company, Inc., a domestic corporation, be adjudicated a bankrupt; that thereafter the company was duly adjudicated a bankrupt by the United States District Court for the Eastern District of New York, and a trustee was thereafter duly elected and qualified; that by an order of said court "Isaac F. Russell was appointed special commissioner in a hearing and examination held pursuant to the provisions of section 21a of the said Bankruptcy Act"; that Russell was an officer duly authorized by law to administer an oath to witnesses on such hearing; that prior to the date when the petition in bankruptcy was filed the defendant Magen was the treasurer of H. Magen Company, Inc., and had sole charge of the business of the corporation; that on said hearing, duly held under section 21a, before Russell as special commissioner, the defendant appeared as a witness and was duly examined, and before testifying took an oath before Russell as special commissioner to testify truly; that it became relevant to inquire of the defendant as a witness whether he had received the sum of $1,038.46 from Theresa Friend, the wife of Henry B. Friend, or from Abraham Schottland, the son-in-law of Henry B. Friend, in payment of a quantity of merchandise which had been sold by H. Magen Company, Inc., to Henry B. Friend, and whether or not he had signed a certain paper as a receipt for said money; that the matters were material on the question of the amount of assets of the bankrupt estate, and on the question whether H. Magen Company, Inc., had or had not concealed assets from its trustee in bankruptcy; that the defendant falsely and willfully testified that he had not received the sum of $1,038.46 from Henry B. Friend, Theresa Friend, or Schottland in payment of a quantity of merchandise sold by H. Magen Company, Inc., to Henry B. Friend, and that he did not sign any paper as a receipt for such money, and that he had rendered an invoice to Henry B. Friend for all merchandise sold to him by H. Magen Company, Inc.; and that all moneys received from Henry B. Friend in payment of merchandise sold by H. Magen Company, Inc., were deposited in the bank account of H. Magen Company, Inc.

The special commissioner's oath to perform his duties, taken before a notary public, was produced, and he testified that he administered the usual oath to the defendant, and knew that he did so, because it was his unvarying practice. The stenographer was not produced, but Mr. Shaine, the attorney for the trustee in bankruptcy, testified that the defendant had sworn before the commissioner that he had made no sale to Henry B. Friend for $1,038.46, or received any such sum from Friend, or rendered any invoice therefor; that the initials on the receipt to Friend for $1,038.46 were not in his handwriting, and he had never seen the paper in his life before it was produced at the hearing; that he had deposited all moneys received from Friend and from all other customers from sales, and had rendered invoices for every dollar's worth of merchandise sold to him.

There was testimony from Teitelbaum, a public accountant, who had been employed by H. Magen Company, Inc., that the defendant was treasurer of that company and supervised the business; that there was no entry of a sale of merchandise to Friend for $1,038.46, but there were entries of other sales by H. Magen Company, Inc., to Friend, for which invoices were offered in evidence on most of which the defendant stamped an O. K. (Exhibit No. 2).

Friend testified that he had a conversation with Magen over the telephone, arranged to purchase cotton yarn from him; that the latter asked for cash the next morning; that Friend had his wife furnish $1,-

038.46, drawn from her savings bank account; that for all other transactions Friend received invoices, but for this there was none, and all others were paid by check, but for this Magen received cash. The withdrawal of the cash from the savings bank and the delivery of it to Magen was testified to by Theresa Friend and Schottland. He testified that a receipt for the money running to H. B. Friend was signed by the defendant and bore his initials, and that he paid the $1,038.46, received from Theresa Friend, to the defendant. H. B. Friend testified that the cotton yarn was delivered.

[1] The defendant called no witnesses and did not testify himself. The foregoing facts were sought to be qualified by other portions of the testimony and by cross-examination, but the credibility of the testimony, as well as the proper inferences to be drawn from it, was a question for the jury.

There was considerable altercation of an unfortunate and unseemly kind between the trial judge and the attorney for the defendant. The judge was justified in curbing some of the examination of counsel, but several times went beyond the limits of judicial propriety. On the other hand, counsel was exceedingly provocative and contemptuous. The altercation became especially evident when the witness Teitelbaum had said that he had been shown the books in the district attorney's office "a few months ago," and corrected this in his answer to the next question by saying: "No; I was not shown these books. I am mistaken." The defendant's attorney then said:

"Did you just make a mistake, or did you willfully tell an untruth, when you said you were shown these books in the district attorney's office two months ago? A. I just make a mistake."

The court then remarked:

"Is that the way you assail witnesses before the testimony is finished here? Is that the practice? * * * Don't you think the witness ought to be dealt with fairly?"

There can be no doubt that counsel's way of cross-examining the witness, by in effect asserting that the latter had said he had been shown the "books in the district attorney's office two months ago," was rude and objectionable. He should not have asserted something, but have cross-examined to ascertain its truth, if he wished to compare it with other statements of the witness, in order to affect credibility. Doubtless the court had a perfect right to object to the mode of cross-examination adopted. But the colloquy that ensued was unseemly, and the reply of the court to counsel's statement that he was doing the best he could to protect his client, "But is the government to be condemned and sent to hell because he may be on trial?" was entirely unjudicial. This remark, provoked by a question originally harsh, and by a long, irritating colloquy, was taken up by counsel in a way not calculated to allay any prejudice by the jury against himself, but to create prejudice against the judge. Counsel moved to withdraw a juror, threatened to withdraw from the trial, and embellished the record by saying among other things:

"And may I say I have tried more cases professionally than your honor has. Look at the records here and in the Southern district, and I have never had a judge say to me what your honor said to me. I won't permit your honor to tell me anything about hell in an open court."

"If the jury says I have not been courteous and respectful to your honor, I will profusely apologize to your honor. * * *

"The Court: I am not going to wrangle with you any more. We can either go on with this case or adjourn it and assign other counsel.

"Mr. Slade: Your honor has not any power to assign counsel, except if he is a pauper. In view of your honor's observations, unless your honor publicly apologizes to me, the same as I did with your honor, then I will proceed. I am entitled to that professionally."

The colloquy, which shed no light on the merits of the case, occupied about 15 pages of the record, and exhibited a judge of too hasty temper and an attorney having an entirely inadequate conception of the proprieties of his calling.

Slade & Slade, of New York City (Maxwell Slade and David H. Slade, both of New York City, of counsel), for plaintiff in error.

William A. De Groot, U. S. Atty., of Brooklyn, N. Y. (Morris E. Packer, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge (after stating the facts as above). The substance of the errors assigned is that:

(1) No proper allegation of the appointment of the special commissioner is found in the indictment; no such person as a special commissioner could be appointed to conduct a hearing under section 21a of the Bankrupt-

cy Act (11 USCA § 44), and he never took an oath to perform his duties.

(2) The indictment is bad for duplicity.

(3) The government failed to prove the offense charged, and especially failed to prove some of the assignments of perjury alleged.

(4) The remarks of the trial court were such as to deprive the defendant of a fair trial.

[2, 3] The contention that the allegation of the indictment that "Isaac F. Russell was appointed special commissioner in a hearing and examination held pursuant to the provisions of section 21a of the * * * Bankruptcy Act" is irregular, and states an impossibility, is so purely technical and fanciful that it can hardly be viewed seriously. An indictment is intended to inform a defendant of the charge against him, so that he may be prepared to meet it. Is it possible that any one can doubt that the foregoing allegation means that Isaac F. Russell was appointed special commissioner in respect to a hearing under section 21a? The clause may not be drafted in the best English, but it is clear enough. The defect, if any, is in matter of form only, and should be disregarded. R. S. §' 1025 (18 USCA § 556). The point that a special commissioner could not be appointed to conduct the examination is unavailing. A special commissioner has long been authorized to act for the court in taking testimony under section 21a. United States v. Liberman (C. C.) 176 F. 161; In re Champion Tool Co. (C. C. A.) 4 F.(2d) 1000; Cameron v. United States, 231 U. S. page 710, 34 S. Ct. 244, 58 L. Ed. 448.

[4] It is contended that a general order of reference, which is said to have been made here before the testimony of the defendant was taken, superseded the examination before the special commissioner, because of the language of General Order XII of the Supreme Court, which says that " * * * thereafter all the proceedings, except such as are required by the act or by these General Orders to be had before the judge, shall be had before the referee."

Certainly it is an extreme construction of this General Order to hold that proceedings pending under an order made before the reference shall be nullified by an order of reference. The purpose of General Order XII is to relieve the District Court in bankruptcy, and to set the limits to the powers of the referee's court. In view of this evident purpose, it is thought that the General Order is not to be interpreted as depriving the District Court of original jurisdiction in

such matters as may be brought before it. One can hardly suppose that the court, which has power to dispense with a referee altogether, cannot dispense with him in part, particularly in proceedings pending at the time a general reference is ordered. Indeed, a court of distinguished judges said in the case of In re Sweeney (C. C. A.) 168 F. at page 614: "The bankruptcy proceeding may be referred to the referee by a general order, or to him as referee upon special issues, his power depending upon the order of reference."

At most the matter was one of practice, and not of jurisdiction, and there is no proof of any attempt to vacate the order appointing the special commissioner, or of any objection to testifying before him. In re Nankin (C. C. A.) 246 F. 811.

[5, 6] As for the alleged failure of the special commissioner to take an oath, there was no statutory requirement that he should so qualify. Thompson v. Smith, Fed. Cas. No. 13,976; Street's Fed. Eq. Pr. § 1396. See, also, Seamen v. Northwestern Mutual Life Ins. Co. (C. C. A.) 86 F. 493. Moreover, he seasonably signed an oath before a notary public, which is now on file. A notary is authorized to administer oaths under section 20 of the Bankruptcy Act (11 USCA § 43); Hardy v. United States (C. C. A.) 22 F. (2d) page 153.

[7] The objection that the indictment is bad for duplicity is likewise untenable. The indictment alleges facts which constitute a crime. The reference to the two sections, under each of which the facts stated constituted a crime, is mere surplusage. The sufficiency of the pleading, so far as this objection goes, is settled by the authority of Hammer v. United States, 271 U. S. 620, 46 S. Ct. 603, 70 L. Ed. 1118.

[8] It is said that the defendant never testified, as alleged in the indictment, that he did not sign any paper as a receipt for the $1,038.46. The testimony of Mr. Shaine and some of the extracts read from the stenographer's minutes on his cross-examination would have left this matter somewhat in doubt, but for the fact that the defendant said that he had never seen the receipt in his life. Such testimony was certainly a sufficient basis for a finding by the jury that the allegation of the indictment that defendant testified "that he did not sign any paper as a receipt for such money" was established.

The objection is likewise unavailing that there was no basis for a finding that defendant's testimony was untrue, when he said that he had not received the sum of $1,038.46

in payment for a quantity of merchandise sold by H. Magen Company, Inc., to Henry B. Friend. The defendant was the treasurer of the company and in control of its business. He had constantly sold other goods to Friend for the company. When he arranged the sale for $1,038.46, shortly before the bankruptcy, and the payment was made by cash, rather than by a check, as in all the other cases, the inference could well be drawn that the sale was of the bankrupt's goods, and the method of conducting it was adapted to conceal the transaction. The government furnished ample proof to establish the commission of the crime.

[9] In regard to the objection that the remarks of the trial court were such as to prevent a fair trial, we are not persuaded that the constant reiteration by the attorney of his complaints against the judge was not calculated to prejudice the court, rather than the attorney or his client. The attorney was allowed to bring out on cross-examination any facts he might reasonably desire, and he called no witness except a deputy clerk of the District Court, who merely gave some unimportant evidence as to the record in his office.

In other words, the proof of guilt was substantially uncontradicted and the reliance of the defense was on points of law rather than on the facts. To hold that a personal altercation, having no real relation to the merits of the litigation, causes a mistrial, would be to reward a defendant for the shortcomings of his lawyer in a case where it is mere speculation to say he suffered any prejudice.

The judgment is affirmed.