**BUTLER v. UNITED STATES.**

No. 6221.

United States Court of Appeals
Fourth Circuit.

Argued June 27, 1951.

Decided Sept. 15, 1951.

434

J. Franklyn Bourne, Washington, D. C. (Curtis P. Mitchell, Frank D. Reeves and B. Dabney Fox, all of Washington, D. C., on the brief), for appellant.

Frederick J. Green, Jr., Asst. U. S. Atty., Baltimore, Md. (Bernard J. Flynn, U. S. Atty. and C. Ross McKendrick, Asst. U. S. Atty., Baltimore, Md., on the brief), for appellee.

Before SOPER, and DOBIE, Circuit Judges, and TIMMERMAN, District Judge.

DOBIE, Circuit Judge.

This is an appeal from a criminal conviction in the United States District Court for the District of Maryland. Appellant, hereinafter called defendant, was convicted of the sale of narcotics in violation of the Harrison Narcotic Act, 26 U.S.C.A. §§ 2550 et seq., 3220 et seq., and the Marihuana Tax Act, 50 Stat. 551.

Sometime in January, 1950, at the request of the Provost Marshal at Andrews Field, a large air force base in Maryland, federal narcotic agents, Newkirk and Pappas, undertook an undercover investigation of alleged drug traffic at that base. During the course of this investigation, these agents, under the pretense of purchase for resale, bought both heroin and marihuana from defendant and other drug peddlers at Andrews Field.

Defendant was indicted for the sale of narcotics by the Grand Jury for the District of Maryland on April 4, 1950, and a bench warrant for his arrest was subsequently issued. He was not apprehended, however, until June 17, 1950, when he was arrested in Washington, D. C., and taken to Baltimore, where he was held in jail in lieu of $2,000 bond. On June 30, 1950, defendant was arraigned and entered a plea of not guilty.

Defendant was tried and convicted in December, 1950, and was given a sentence of four and one-half years. The positive testimony of agents Newkirk and Pappas

established five sales of heroin and one sale of marihuana to them by the defendant. Defendant did not introduce any testimony which even tended to refute the testimony of these two agents.

On appeal, defendant has raised some twenty-seven points of error. After a careful examination of the record, we find no merit in his contentions either singularly or collectively. Indeed, many of the points raised are so lacking in merit as not to warrant comment by this Court.

The first error alleged is the Court's refusal to inquire of the jurors whether any of them were associated with, friendly to, or related to, the United States Attorney or any of the prosecution's witnesses. Rule 24(a) of the Federal Rules of Criminal Procedure, 18 U.S.C.A. vests in the trial judge a certain discretion as to what questions should be asked jurors on *voir dire*. See United States v. Dennis, 2 Cir., 183 F.2d 201, 226–227; Fredrick v. United States, 9 Cir., 163 F.2d 536, 550–551.

 This Court is not free to interfere unless a clear abuse of discretion is shown. Bratcher v. United States, 4 Cir., 149 F.2d 742; Speak v. United States, 10 Cir., 161 F.2d 562. We find no such abuse of discretion in this case. Although the Court refused to allow defense counsel to put his inquiry to the jury, it did make such an inquiry of the prosecutor. The Assistant United States Attorney went over the jury list and satisfied the Court that he had no such acquaintance or relation with any of the jurors as would disqualify them. Under these circumstances we feel the trial court did all that could reasonably be expected; so defendant can hardly argue this exercise of discretion to be reversible error, particularly when there is not even an allegation, much less proof, that any disqualifying relationship existed between the United States Attorney and his witnesses on the one hand and any of the jurors on the other.

 The defendant urges that the trial court committed reversible error by allowing the United States Attorney in his opening statement and closing argument to mention intoxicating liquors, the harmful effects of improper use of narcotics, other narcotic cases, conspiracies and how the case developed, since such statements were "inflammatory and highly prejudicial." Defendant also argues that prejudicial references were made to defense counsel. Defendant's contentions are wholly lacking in merit. The very purpose of an opening statement is to inform the jury how the case developed, its background and what will be attempted to be proved.

An excellent illustration of what defendant has denoted as "inflammatory and highly prejudicial" is that portion of the opening statement which refers to intoxicating liquors in this language: " * * it is enough to say that the right of the government to control is, very fortunately, based upon its control of revenue by taxing and thereby maintaining control. That is also applied to intoxicating liquors. In the case of narcotics it is something more than that." The opening statement and closing argument of the Government were perfectly proper. Defendant's argument can best be answered by Judge Coleman's statement in the Court below: "The Court tried to make it clear to defendant's counsel at the beginning of this case that what is said in argument by counsel is not evidence; and they have a perfect right to give a whole picture and description of the background of the case. In doing that they can talk about the perils of the use of narcotics, the number of cases the Court has had previously, and why they are distressing and terrible cases. He can go into that to any extent that is reasonable and not a waste of time. You can do the same."

 The alleged personal reference to defense counsel is contained in this statement by the Assistant United States Attorney:

"Mr. McKenrick: There is testimony that some of the group appeared there who have already appeared in this Court, and with the very contemptible purpose of introducing into our armed forces these narcotics, marihuana and heroin. It is also very unfortunate that there are lawyers who are ready to—

"Mr. Mitchell: I object to this,—an affront to all of us.

"Mr. McKenrick: There is no affront to you.

"Mr. Mitchell: Every man in this country is entitled to be defended. I do not have to be castigated like that.

"The Court: The United States Attorney is speaking generally about the past cases that have been brought.

"Mr. Mitchell: No, your Honor, he made a specific statement with reference to the lawyers who represent the defendant.

"The Court: I do not understand that he has made any attack."

If any affront was intended, the timely objection of defense counsel certainly prevented any error being committed. Even if some parts of this statement were improper, the overwhelming evidence of defendant's guilt would not permit a reversal by this Court. See McFarland v. United States, 80 U.S.App.D.C. 196, 150 F.2d 593, 594.

 Defendant's contention that the trial court erred in not directing a verdict in his favor on the even counts of the indictment, when the United States Attorney in his opening statement failed to "allege a specific violation by the appellant under the terms of the statute," appears to this Court to be ridiculous. A party is not bound by his opening statement, nor is it the function of the opening statement to apprise the accused of every aspect of the charges against him—that is done by the indictment. If no opening statement had been made, defendant would certainly not be entitled to a directed verdict. In this case, moreover, defendant was informed by the Assistant United States Attorney on inquiry by the Court that there had been no abandonment.

 Defendant's contention that the Government failed to produce evidence to support the even counts of the indictment is also without merit. A cursory reading of 26 U.S.C.A. § 3224(c) shows that a presumption of violation arises from mere possession of heroin without registration and payment of the special tax. Defendant

has introduced no evidence to rebut the presumption. See United States v. Wilson, D.C., 225 F. 82, 84.

 Defendant next contends he was denied a fair trial because of the Court's characterization of his counsel's remarks as "capricious, fanciful and foolish" and their conduct as "frivolous." The Court's statements must be judged in the light of the circumstances in which they were made. Defense counsel had objected time and again to various points in the Government's opening statement—all of which were overruled. At the close of that statement, defendant's counsel had asked for a directed verdict on the ground that the even counts in the indictment had been abandoned. When that motion was denied, counsel again attacked the opening statement as being "inflammatory." He then asked for a directed verdict because of an alleged variance between the number of sales of narcotics mentioned in the opening statement and those charged in the indictment—actually there was no variance. In the light of all these untenable objections and motions, which the trial judge quite properly overruled, when defense counsel posed another highly technical and untenable objection, Judge Coleman said: "Mr. Bourne, this Court will not allow this case to go on; it will not allow you to act in it, unless you refrain from capricious and fanciful and foolish objections. Now, you remember that at the start. The Court does not want to have to indicate that to you any more, but if you are not sufficiently informed as to how to try a case in this Court you will not be allowed to try it, and if you are going to jump up every minute and make objections in the frivolous way you have been doing, the Court is not going to let you try the case. Now, just remember that. That applies to your associate. Just bear that in mind."

 This statement was proper in view of the conduct of counsel for defense. Attorneys have an affirmative duty to conduct themselves properly before the courts. Where counsel persists in obnoxious actions, the court must be free to warn them of any such improprieties. United States

v. Lee, 7 Cir., 107 F.2d 522, 529; Mansfield v. United States, 8 Cir., 76 F.2d 224, 232; Magen v. United States, 2 Cir., 24 F.2d 325, 327, 329; Moore v. United States, 5 Cir., 132 F.2d 47.

Appellant's contentions that the Court intimidated defense counsel by threatening not to allow them to continue the case, that it improperly indulged in "intonations, gestures and gesticulations" are not worthy of comment. There was no intimidation and the record is replete with unnecessary objections made to the Court's rulings.

We find no abuse of discretion by the trial judge in his rulings on questions of evidence. Rule 52(a) of the Federal Rules of Criminal Procedure. See, also Bihn v. United States, 328 U.S. 633, 66 S.Ct. 1172, 90 L.Ed. 1485; Bell v. United States, 4 Cir., 185 F.2d 302; United States v. Spadafora, 7 Cir., 181 F.2d 957.

■ The only alleged error in the Court's instructions to the jury upon which we feel it necessary to comment is that instruction dealing with entrapment. On that question Judge Coleman instructed the jury as follows: "What do we mean by entrapment in the law? Of course, in every arrest there is a certain amount of entrapment in order to outwit the persons who are violating the law or who are about to violate the law. A certain amount of deception has to be exercised in most cases. The law does not forbid that. The type of entrapment that the law forbids is the entrapment which involves originating in the mind of someone a violation of the law, instead of inducing that person already having in mind to violate the law to violate it again. In other words, the question as to whether or not there has been the entrapment that is forbidden by the law depends upon whether or not what is done leading up to the violation amounted to putting it in the mind of a person who had no notion or intent of violating the law, who had no inclination heretofore to do it, and leading him into doing it for the first time. That is the entrapment that is forbidden. But if you find in this case that this man already had in his mind the desire to violate the law, regardless of whether there is proof that he had previously violated it or not, then the law says that the inducement is not improper, even though the actual incident or incidents in question, these various sales, would not have occurred if the Government agent had not been present and asked whether he could make a purchase. That is all a question of fact, Members of the Jury, and it is one for you to decide."

■ It is quite elementary that a court does not have to accept counsel's instructions and is free to draw its own instructions. See Mannix v. United States, 4 Cir., 140 F.2d 250, 254. Defendant's contention that the instruction given was not a correct statement of the law is unsound. What the lower court said substantially agrees with the classic definition of entrapment set down by Chief Justice Hughes in Sorrells v. United States, 287 U.S. 435, 445, 53 S.Ct. 210, 214, 77 L.Ed. 413, where he quotes the language of Judge Wood in Newman v. United States, 4 Cir., 299 F. 128, as follows: "* * * It is well settled that decoys may be used to entrap criminals, and to present opportunity to one intending or willing to commit crime. But decoys are not permissible to ensnare the innocent and law-abiding into the commission of crime. When the criminal design originates, not with the accused, but is conceived in the mind of the government officers, and the accused is by persuasion, deceitful representation, or inducement lured into the commission of a criminal act, the government is estopped by sound public policy from prosecution therefor." See, also, Cratty v. United States, 82 U.S.App.D.C. 236, 163 F.2d 844; United States v. Becker, 2 Cir., 62 F.2d 1007.

■ The final question for our determination is the validity of defendant's arrest. Defendant was arrested in Washington, D. C., by the local police after he had been indicted in the Maryland District Court and after a bench warrant for his arrest had been issued. Defendant's contention is that he should have been taken before a Commissioner in Washington, D. C., pursuant to Rule 5, Federal Rules of

Criminal Procedure. He also contends that his delivery to the Deputy United States Marshal was improper as a warrant for removal had not been obtained from the courts in Washington. With these contentions we cannot agree. Defendant's arrest was pursuant to a bench warrant issued after indictment, and the manner of his arrest is covered by Rule 9 of the Federal Rules of Criminal Procedure rather than Rule 5. Rule 9 provides that the warrant for arrest shall be served as provided in Rule 4(c)(3) which reads: "The warrant shall be executed by the arrest of the defendant. The officer need not have the warrant in his possession at the time of the arrest, but upon request he shall show the warrant to the defendant as soon as possible. If the officer does not have the warrant in his possession at the time of the arrest, he shall then inform the defendant of the offense charged and of the fact that a warrant has been issued."

The notes of the Advisory Committee explain the reason for this Rule as follows: "The provision that the arresting officer need not have the warrant in his possession at the time of the arrest is rendered necessary by the fact that a fugitive may be discovered and apprehended by any one of many officers. It is obviously impossible for a warrant to be in the possession of every officer who is searching for a fugitive or who unexpectedly might find himself in a position to apprehend the fugitive. The rule sets forth the customary practice in such matters, which has the sanction of the courts."

In view of these rules, we can see no purpose which could have been served by taking defendant before a Commissioner. The indictment itself is evidence of probable cause. We further find that it was not error to return defendant to the District of Maryland from the District of Columbia without removal proceedings. Rule 40(a) of the Federal Rules of Criminal Procedure, with respect to arrest in a district in another state not more than 100 miles from the district of indictment, reads in part: "If such an arrest is made on a warrant issued on an indictment or information, the person arrested shall be taken before the district court in which the prosecution is pending or, for the purpose of admission to bail, before a commissioner in the district of the arrest in accordance with provisions of Rule 9(c)(1)."

Since the removal was less than 100 miles, and since defendant did not request admission to bail, the removal here was proper. We hold, therefore, that defendant's arrest, removal and detention were perfectly proper.

For the reasons above stated, the judgment of the District Court is affirmed.

Affirmed.