UNITED STATES of America
v.
Morris GINN, Also Known as Michael Gates, Appellant.

No. 11500.

United States Court of Appeals Third Circuit.

Argued March 22, 1955.

Decided April 27, 1955.

Rehearing Denied June 2, 1955.

A. Harry Levitan, Philadelphia, Pa., for appellant.

Robert J. Spiegel, Asst. U. S. Atty., Philadelphia, Pa., (W. Wilson White, U. S. Atty., Philadelphia, Pa., on the brief), for appellee.

Before MARIS, GOODRICH and KALODNER, Circuit Judges.

GOODRICH, Circuit Judge.

This case involves questions under the Alien Registration Act of 1940, 54 Stat. 673, 1940, 8 U.S.C. §§ 451–560, 1946, as amended, 8 U.S.C. § 456, Supp. V, 1952, repealed, 66 Stat. 166, 280, 1952, and substantially reenacted in the Immigration and Nationality Act of 1952, 66 Stat. 163, 223, 8 U.S.C.A. §§ 1301–1306. The defendant presented himself for registration and fingerprinting as an alien to an immigration officer in Philadelphia, Pennsylvania, on January 30, 1953. He was a person who was subject to the provisions for registration under the 1952 Act. He was refused registration pending determination as to his liability for his admitted failure to register under the Alien Registration Act of 1940. Subsequently, an information was filed against him in three counts. The first has to do with his failure to apply for registration under the 1940 statute. The second and third counts charge him with failure to give the notice of his address in 1951 and in 1952 as required by the Alien Registration Act of 1940. 54 Stat. 675, 1940, as amended, 64 Stat. 1012, 1950, 8 U.S.C. § 456, Supp.

V, 1952. He was convicted on all three counts and judgment was subsequently entered against him, the filing of which was accompanied by an opinion by the district court. See, D.C.E.D.Pa.1954, 124 F.Supp. 658. We shall discuss the second and third counts together.

### I. *First Count.*

We turn then to the case made against the defendant under the first count, namely, his failure to register under the 1940 statute. Here is the provision:

"(a) It shall be the duty of every alien now or hereafter in the United States, who (1) is fourteen years of age or older, (2) has not been registered and fingerprinted under section 451 of this title, and (3) remains in the United States for thirty days or longer, to apply for registration and to be fingerprinted before the expiration of such thirty days." 54 Stat. 673.

It is not disputed that the defendant came within the terms of this statute and it is not disputed that he did not register in accordance with it.

In defense he urges two points.

First he says that the statute of limitation has run. The offense, it is argued, was completed December 27, 1940, which was the date fixed in the regulations for compliance with the requirements of the statute. The offense being completed at that time, he says, the three year statute began to run from that date and he is now immune from prosecution. The statute did not say, he says further, that the offense was a continuing one and the regulations made no provision looking to that effect. He concedes that if the regulations had done so his argument would not be well founded. This is conceding a pretty wide effect to regulations but we do not pass on the point one way or the other.

Dead against the appellant's contention upon this phase of the case is United States v. Franklin, 7 Cir., 1951, 188 F.2d 182. It is true, as defendant says, that the court in that case had many points before it and the limitation point came up only after trial. Nevertheless, the decision is there and from a court of co-ordinate jurisdiction. We are not going to pass upon the question whether we agree with the Seventh Circuit or whether we do not because we think that the second point urged by the appellant is conclusive in his favor.

This argument has to do with the effect of the Act of 1952. This Act also has a provision for registration of aliens almost exactly like the provision in the 1940 statute. It also has a general repealer clause. Immigration and Nationality Act of 1952, § 403, 66 Stat. 163, 279–280, 1952. Then there is a savings clause which provides as follows:

"Nothing contained in this Act, unless otherwise specifically provided therein, shall be construed * * * to affect any prosecution * * * or any status, condition * * * act, thing, liability, obligation, or matter, civil or criminal, done or existing, at the time this Act shall take effect". Immigration and Nationality Act of 1952, § 405, 66 Stat. 163, 280, 8 U.S.C.A. § 1101, note.

The government urges that this savings clause preserves to it the power to prosecute those who failed to obey the 1940 statute even though the 1940 statute has been superseded by the 1952 Act. The defendant says this is not the case. The Act is a very broad one and the savings clause could apply to ever so many things in the statute but should not be applied to save prosecutions for failing to register under the earlier enactment. We think the defendant is right.

The purpose of the registration provisions in the 1952 statute, like that of 1940, is to get a record of aliens in the country together with a means of identifying them. The House committee report to the 1952 statute makes this comment:

"The bill incorporates in substance the provisions of the Alien Registration Act, 1940, relating to

the registration of aliens. These provisions are set forth in chapter 7 of the bill. In general, the provisions have been modified in some respects to require, so far as practicable, the registration and fingerprinting of all aliens in the country and to assist in the enforcement of those provisions." 2 U.S.Code Cong. & Ad. News 1723 (1952).

On the theory advanced by the government we think this policy would be defeated. If an alien who comes to register under the 1952 Act is thereupon to be prosecuted for not having registered before under the earlier statute, we think a pretty effective means has been provided for scaring away from the registrar's office anybody who through neglect, inadvertence or otherwise has previously failed to register. A criminal statute may, in some cases, be intended to act as a deterrent to prohibited conduct. Here we do not have conduct prohibited on the part of the alien; the purpose is to get him to do something affirmatively, namely, to come and register himself. He is subject to sanctions not if he acts, but if he fails to act. To get the 1952 statute to accomplish its purpose we think it must be construed to offer amnesty to those who had not registered before in order that they may now come in and register just as this defendant was advised by his counsel to do and as he tried to do.

Furthermore, to interpret the statute otherwise may get us into questions under the Fifth Amendment which are to be avoided if possible. When a man comes to register he is asked to fill out a form which gives facts, among other things, about his arrival in the United States, when and where; in what capacity he came, when he arrived in this coun-

try and how long he has lived here. If he does not supply the information he presumably will not be registered. Then he has violated the Act of 1952. If he does supply the information he supplies all the facts which are necessary to open up prosecution for failure to register under the Act of 1940. We do not have to come to the conclusion whether this is a violation of rights under the Fifth Amendment or not. Instead, we refrain from giving the statute a construction which would raise such a problem.

We have no authority to guide us on this question.[1] Neither side has supplied us with any clause in legislative history or otherwise which bears directly on it and we have, ourselves, nothing to offer except the section of the Committee report already quoted. We do feel pretty clear, however, that our interpretation of the statute is the one which will do best to make it work.

The judgment will be reversed on count one.

## II. *Second and Third Counts.*

We need not take long to discuss the second and third counts brought against the defendant. These were for his alleged failure to file address cards in 1951 and 1952 as required by the law in effect for those years. 54 Stat. 673, 1940, as amended, 64 Stat. 1012, 1950, 8 U.S.C. § 456, Supp. V, 1952.

The government's sole proof in this case consisted of an affidavit from the official in charge of these alien address cards that the defendant's cards for the years in question could not be found in the official files.[2] The affidavit is not a shining example of perfect English. It says that the acting chief, records administration branch, has caused examination to be made of his records and

---

1. The recent Supreme Court decisions in United States v. Menasche, 1955, 348 U.S. 528, 75 S.Ct. 513, and Shomberg v. United States, 1955, 348 U.S. 540, 75 S.Ct. 509, which involved the interpretation of the general savings clause of the 1952 Act, but in a different context, do not shed any light upon the problem presented in this case.

2. There was also a stipulation that the defendant was required under law to file these address cards. We do not see that that stipulation has much significance because if he was subject to the Act he was required to file cards regardless of what counsel stipulated.

"that there does not appear therein any record of the filing of an annual Address Report card by Morris Ginn alias Michael Gates * * *." Why he did not say that he found no card for Ginn in his files we do not know. But we will treat the affidavit as though that is what he said. The defendant gave rather elaborate testimony about filling out cards and leaving them at United States Post Offices. His evidence was corroborated in part by his wife. Of course, after verdict by a jury we cannot rely upon this.

Regardless of the defendant's explanation, however, there is no case for the government upon which a verdict can stand. The method prescribed for collecting these address cards is not one where their presence or absence from a file two or three years after the cards were supposed to be filled out and given to government officials proves much of anything. The turning in of such a card to a clerk at a post office window,[3] its assembly, with other cards of a similar nature, the packaging and forwarding to Washington, the arrangement of a card in a file, possible withdrawal for purposes of consultation by some government employee of cards in particular file drawers—all provide too many chances of error, loss or misplacement to prove a criminal case by the simple absence of the cards from a file. We might add that it was not even proved that the cards were not in the file. The most

the affidavit says is that the custodian looked and did not find them.

The district court devotes considerable time to a thoughtful analysis of the decisions in this Circuit which say, at any rate, that in a circumstantial evidence case proof must leave no reasonable basis for any verdict except that of guilty. United States v. Laffman, 3 Cir., 1945, 152 F.2d 393; United States v. Tatcher, 3 Cir., 1942, 131 F.2d 1002; United States v. Russo, 3 Cir., 1941, 123 F.2d 420; Paul v. United States, 3 Cir., 1935, 79 F.2d 561; Yusem v. United States, 3 Cir., 1925, 8 F.2d 6. The judge seems not quite sure that the language used in some of our former opinions is to be literally applied.

In this case we do not need to re-analyze those opinions to see whether there is anything inconsistent between them and the recent comment by the Supreme Court upon circumstantial evidence in tax cases. Holland v. United States, 1954, 348 U.S. 121, 75 S.Ct. 127.[4] The basis for our conclusion here and the reversal of the judgment of the district court is that the proof is insufficient to let a jury find beyond a reasonable doubt that this man did not file his address cards as required. If the result is that the government is embarrassed by having to prove a negative in this type of case the matter can easily be adjusted by legislation.

The judgment of conviction on these two counts will be reversed on the simple

---

3. See 8 C.F.R. § 170.6 (Supp.1951).

4. In the Holland case, Justice Clark stated: " * * * The petitioners assail the refusal of the trial judge to instruct that where the Government's evidence is circumstantial it must be such as to exclude every reasonable hypothesis other than that of guilt. There is some support for this type of instruction in the lower court decisions, [citing cases] but the better rule is that where the jury is properly instructed on the standards for reasonable doubt, such an additional instruction on circumstantial evidence is confusing and incorrect, [citing cases and text].

"Circumstantial evidence in this respect is intrinsically no different from testimonial evidence. Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence. In both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more." 1954, 348 U.S. 121, 139-140, 75 S.Ct. 127, 137.

ground that the proof does not establish the commission of a crime.

The judgment of the district court will be reversed and the case remanded with the direction to enter judgment of acquittal on counts one, two and three.