**UNITED STATES of America**

v.

**Abe ZEID, Appellant.**

**No. 13160.**

United States Court of Appeals Third Circuit.

Argued June 23, 1960.

Decided Aug. 2, 1960.

---

Saul Davis, Pittsburgh, Pa., for appellant.

John R. Gavin, Asst. U. S. Atty., Pittsburgh, Pa. (Hubert I. Teitelbaum, U. S. Atty., John R. Gavin, First Asst. U. S. Atty., Pittsburgh, Pa., on the brief), for appellee.

Before McLAUGHLIN, STALEY and HASTIE, Circuit Judges.

McLAUGHLIN, Circuit Judge.

Appellant was convicted of (1) wilfully failing to make application for registration as an alien under the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1302(a) and (2) of failing to give written notice to the Attorney General of his current address in accordance with the same Act, 8 U.S.C.A. § 1305. He was sentenced to be imprisoned for five months and fined $1,000 on the first count. On the second count he was sentenced to be imprisoned for thirty days (to run concurrently with the sentence given on the first count) and to pay $200 fine.

■ Seven points are urged for reversal. The first of these, one of the two main points argued, is that, as a matter of law, the record is void of evidence from which the jury could reasonably conclude appellant had wilfully failed to make application for alien registration and to be fingerprinted.[1]

The trial disclosed that examination of the Immigration and Naturalization Service files had developed nothing to indicate appellant had ever registered as an alien. Appellant did not take the stand nor was there any evidence offered in his behalf. Similarly, examination of the Service files evidenced no annual address report for 1958 as to appellant.[2] The files of the Service did show the date of appellant's entry into this country as March 27, 1913, which was in no way contradicted.

Wilfulness, by the language of Section 1302(a), is an indispensable element of the offense under the first count and the trial judge so charged. The government recognized its burden in this connection and submitted evidence, set out below, of Zeid's course of conduct which by a

---

1. The applicable statute, 8 U.S.C.A. § 1302 (a), reads:

"It shall be the duty of every alien now or hereafter in the United States, who (1) is fourteen years of age or older, (2) has not been registered and fingerprinted under section 1201(b) of this title or section 30 or 31 of the Alien Registration Act, 1940, and (3) remains in the United States for thirty days or longer, to apply for registration and to be fingerprinted before the expiration of such thirty days."

2. Section 1305 in pertinent part reads:

"Every alien required to be registered under this subchapter, or who was required to be registered under the Alien Registration Act, 1940, as amended, who is within the United States on the first day of January following the effective date of this chapter, or on the first day of January of each succeeding year shall, within thirty days following such dates, notify the Attorney General in writing of his current address and furnish such additional information as may by regulations be required by the Attorney General. Any such alien shall likewise notify the Attorney General in writing of each change of address and new address within ten days from the date of such change. * * * *"

hard count demonstrated that he was fully aware he was an alien required to register and be fingerprinted but purposely and wrongfully refused to do so.

On October 27, 1958, appellant was subpoenaed as a witness to testify before a grand jury in Pittsburgh, Pennsylvania. He was not a defendant in the matter, no prosecution of him was being sought and nothing in that particular inquiry as far as he is concerned has ever come before a grand jury. In the course of his examination as such witness he was asked by a juror, "Why have you never become a citizen of the United States?" Appellant answered, "Well, I was under the assumption that my father was a citizen due to the fact he was over in this country before I was born, and I never realized until about 1950 that I wasn't a citizen." A juror then asked, "Have you ever tried to become one since 1950?" Appellant answered, "No, I haven't." (Emphasis supplied.)

That same day, October 27, 1958, following his grand jury appearance, he went to the Pittsburgh office of the Immigration Service and registered as an alien. The following day appellant talked with George P. Spine, an Immigration and Naturalization Service investigator, at the Service office in the Pittsburgh Federal Building. Spine testified about this as follows: "I asked him why he had not registered as an alien under the Alien Registration Act of 1940. At first he stated he thought he was a citizen through his father; later on he stated he believed he was born in New York until about 1947, when he assumed that he may have been a citizen through his father, whom he believed was naturalized, although he never had any verification of his father's naturalization. He further stated that about four months previous to the time I first interrogated him, he had ascertained from a brother Milton I believe, that he was not a citizen, either through his father nor by birth in the United States." Spine also said: "He stated that when his brother informed him that he was not a citizen, which was four months before I talked

to him, why, he had gone to the Miami Immigration office and they referred him to Pittsburgh, but he had returned to the Pittsburgh area two months before I talked to him, and had not come to the Immigration office." Spine was asked, "Did you ask him why he had not come to the Immigration office?" He answered: "He said he was sick. I asked him, he said he had been sick." Spine stated that he had no reason to disbelieve appellant when the latter stated he was referred to the Pittsburgh office.

Spine saw appellant again on January 26, 1959. At that time, as Spine testified and was not denied, "He stated that he knew he was born in Russia in 1924, that is, he knew as far back as 1924 that he was born in Russia." (Emphasis supplied.)

The Director of Treatment Resources, Boys Industrial School, Lancaster, Ohio, was a witness at the trial. He had with him the records of the school as called for by his subpoena duces tecum. Appellant's attorney stipulated that the School records showed that the place of birth of appellant was Russia, his date of birth, July 30, 1907 and that he was admitted to the School August 26, 1924, at which time he was seventeen years old.

An assistant clerk from the Orphans Court of Westmoreland County, Pennsylvania was a witness. He produced under subpoena the original application of appellant and Norma Tallarico for a marriage license made on December 23, 1954 and signed by appellant. This gives his birthplace as New York City, New York. Cross-examination developed that each applicant answers his or her own questions.

A certification of the master fingerprint card of appellant on file with the Federal Bureau of Investigation was in evidence. The master card is signed by appellant and gives his date of birth and his birthplace as Russia. The card dates are from September 8, 1930 to July 15, 1936. This was accepted into evidence strictly for the purpose of showing appellant had stated on the first date noted on

the card or within the dates named, that his birthplace was Russia.

Finally, on this phase, there was in evidence the appellant's family record of the Jewish Family Service of Cleveland, Ohio. This noted that appellant was born 7-15-07 at Brest-Litovsk, Russia. The application for assistance was made to the service by the mother. The record itself does not state who supplied the above information re appellant.

In the face of the outlined evidence it cannot be reasonably concluded that the jury did not have before it substantial proof for the government's contention that appellant's failure to register and be fingerprinted under 8 U.S.C.A. § 1302(a) had been wilful. The whole theory of the defense is that there is nothing in the government's case to furnish any support to the necessary element that Zeid intentionally did not register as he was commanded to do by the statute. But appellant's own story, pieced together from what he told Spine and the various exhibits, is self-destroying as far as any alleged lack of intent not to register and be fingerprinted is concerned. For example, regarding his application for a marriage license made December 23, 1954. He there said his birthplace was New York City, New York. At that time under various admissions by him in evidence, he knew this was false. He knew he had been born in Russia. In the face of this deliberate falsehood the argument to us is that "The *apparent* misstatement * * * could have been made out of a desire to conceal foreign birth from his intended wife * * *." (Emphasis supplied.) No evidence was produced by the defense to even bolster up that proposition.

From the above the following facts are before us. Appellant told Spine in 1958 that he had known since 1950 he was not a citizen and that four months prior to talking with Spine he knew from his brother that he was not a citizen either through his father or by birth in this country. At that time, as he said, he went to the Miami Immigration office to register as an alien and was referred to the Pittsburgh branch. He did nothing further for two months. Returning to Pittsburgh he did nothing for two more months and until after he had told the Grand Jury he was not a citizen when he went immediately to the Pittsburgh Immigration office and registered as an alien. The registration in the Lancaster Industrial School, the Cleveland Family Service data, the Federal Bureau of Investigation record, leave no doubt that appellant was born in Russia.

The evidence taken together does not reasonably shape up as mere thoughtless misstatements but rather gives the forceful impression that appellant had known for many years his birthplace was Russia; that at least from 1950 he realized he was not an American citizen; that four months before he went to the Pittsburgh Immigration office he knew he was obliged to register and despite this he did not register until after he had revealed to the Grand Jury that he was an alien.

The trial court, as has been stated, left to the jury the resolving of the query whether defendant's conduct was wilful. There is not now nor could there have been valid objection to the court's instruction on this branch of the charge. The jury found the defendant guilty under the first count from substantial evidence properly before it.

■ The second point asserts that the proof did not establish that appellant had violated 8 U.S.C.A. § 1305 which requires an alien to file an address card.

The government's initial proof of this offense was, as it had to be, the certification by the person in charge of the Immigration and Naturalization Service records that a search had been made of those records and that there was no evidence of an annual address report of appellant for the year 1958. Under our opinion in United States v. Ginn, 3 Cir., 1955, 222 F.2d 289, that proof standing alone would not be sufficient to sustain a conviction. It is well to note that the district court was entirely familiar with

the Ginn opinion and charged the jury that "The failure of the Immigration and Naturalization Service to find in their files an address card for the defendant for Jauuary 1958 is not without more sufficient evidence from which to conclude beyond a reasonable doubt that the defendant did not file such a card." The vital distinction between this appeal and Ginn is that, in the latter the defendant testified that he had filed an address card whereas Zeid never contended to the investigator for the Immigration Service or thereafter that he had filed the statutory card. On the contrary he endeavored to explain why he had not registered as an alien. He said at first he thought he was a citizen through his father, then that he believed he had been born in New York because of which he assumed he may have been a citizen through his father, whom he believed was naturalized and that four months prior to Spine interviewing him, he had learned through his brother "that he was not a citizen, either through his father nor by birth in the United States." In this sequence it is important to remember that the necessity of notifying the Attorney General in writing of one's current address under Section 1305 applies solely to aliens required to be registered under Subchapter II, Immigration, 8 U.S.C.A. § 1281 et seq. or who were required, as Zeid had been, to be registered under the Alien Registration Act of 1940, as amended. In other words there was no reason for Zeid notifying the Attorney General of his current address if he was not compelled to register as an alien. If Zeid believed himself a citizen he might have had some excuse for not notifying the Attorney General. However, by 1950, as he advised Spine he realized he was not. Four months before registering, from what Spine testifies he said, Zeid was conscious of his obligation to do so but there is no inference from his story, as Spine told it, that he ever made claim of having sent notice of his address to the Attorney General during that or any other time. Nor was there evidence

presented on Zeid's behalf on contradiction of the above.

We are satisfied that the government adequately established its case against Zeid on the second count of the indictment, that it was rightly submitted to the jury and that the court's instruction in connection with it was sound under the Ginn opinion.

The remaining points can be disposed of briefly.

■ The court was within its discretion in permitting the government to reopen its case. United States v. Montgomery, 3 Cir., 1942, 126 F.2d 151, 153; Hoffman v. United States, 10 Cir., 1933, 68 F.2d 101, 103. Our United States v. Maggio, 3 Cir., 1942, 126 F.2d 155, 158 is not in conflict with these decisions or with the ruling of the trial court before us.

The district judge did not commit error in refusing to permit the two questions by the defense to the jury on voir dire in the form they were propounded. There was at the very least no clear abuse of discretion in the refusal. Butler v. United States, 4 Cir., 1951, 191 F.2d 433, 435.

■ We think the competency of government exhibit #3 was sufficiently established so as to justify the district judge in admitting it in evidence. Objection is made to the master fingerprint record because it indicated that Zeid had been arrested and charged with assault and battery. The theory is that this prevented a fair trial. The record was offered to help establish defendant's birthplace as Russia. The note about the arrest was on the card. Therefore part of the information on the card did incidentally mention an arrest, not a conviction, for a minor offense. It was eliminated from the consideration of the jury in clear-cut fashion by the court. The problem was satisfactorily handled; there was no error. United States v. Stirone, 3 Cir., 1959, 262 F.2d 571, 576, reversed on other grounds, 1960, 361 U.S.

212, 80 S.Ct. 270, 4 L.Ed.2d 252; Bram v. United States, 8 Cir., 1955, 226 F.2d 858, 863.

■ Appellant's last point is that the admission in evidence of his Grand Jury testimony violated his privilege against self-incrimination because he was not warned that what he said might be used against him.

There is nothing in the record to bear out the assertion that Zeid was not so warned. But assuming he was not, the cases cited by appellant in support of this thesis are not applicable because they involve testimony of defendants or possible defendants (who later became defendants) to indictments arising out of the matters as to which they had been interrogated. What is expressly asked for on behalf of appellant is that the distinction before a grand jury between defendants and witnesses be abolished.

In this instance, as we have already narrated, Zeid's appearance before the Grand Jury had to do solely with an inquiry by that body which was not directed at Zeid and from which nothing ever arose involving him. The Grand Jury never dealt with him as a possible defendant and was in nowise investigating him. He was a witness and nothing more. In answering a question by a juror, utterly unrelated to the business before the Grand Jury, Zeid did blurt out the above mentioned information and this may have so bothered him that he went to the Immigration office the same day and registered. But, with no fraud or duress implied as having been used against Zeid, there was no obligation on the part of the District Attorney to warn him of his constitutional privilege or the dangers of self-incrimination. United States v. Miller, D.C.E.D.Pa.1948, 80 F.Supp. 979, 981. Indeed the District Attorney did not ask the particular questions at all. If Zeid had felt that answering them tended to incriminate him he could have stated his privilege and refused to answer them. Stanley v. United States, 6 Cir., 1957, 245 F.2d 427, 434. See also United States v. Orta, 5 Cir., 1958, 253 F.2d 312, 314.

The judgment of the district court will be affirmed.