## BIHN *v.* UNITED STATES.

No. 675.   Argued March 26, 1946.—Decided June 10, 1946.

*Henry K. Chapman* argued the cause for petitioner. With him on the brief was *David V. Cahill.*

*John J. Cooney* argued the cause for the United States. With him on the brief were *Solicitor General McGrath, Robert S. Erdahl* and *Leon Ulman.*

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

Petitioner and one Bennett were convicted of a conspiracy [1] to violate the statute and regulations governing the rationing of gasoline.[2] It was charged that between July 1, 1943 and September 6, 1944 petitioner would steal gasoline ration coupons from the First National Bank of Poughkeepsie, New York, where she was employed, transfer them to Bennett, and share with Bennett the

---

[1] Criminal Code § 37, 18 U. S. C. § 88.

[2] § 2 (a) of the Act of June 28, 1940, as amended, 54 Stat. 676, 55 Stat. 236, 56 Stat. 177, 50 U. S. C. App., Supp. IV, § 633; § 2.6 of General Ration Order No. 8, as amended, 8 Fed. Reg. 9626, 9 Fed. Reg. 1325, 2746.

proceeds of the sale. The case was tried to a jury. Petitioner alone appealed to the Circuit Court of Appeals, which sustained the judgment of conviction, one judge dissenting. 152 F. 2d 342. The sole question presented below and here is whether a portion of the charge constituted reversible error. We granted the petition for a writ of certiorari because the charge given raised an important question in the administration of the federal criminal laws.

The crucial issue, so far as petitioner's case was concerned, was whether she stole the ration coupons from the bank.

Bennett did not take the stand. Statements made by him out of court were introduced. They implicated petitioner in the scheme. But they were admissible against Bennett alone, not against petitioner. And the trial judge so ruled. Two of Bennett's relatives—his mother-in-law and sister-in-law—testified concerning conversations they had had with petitioner. Their versions of the conversations implicated petitioner in the scheme. Petitioner's version was different. The conflict in testimony presented a question of credibility for the jury. Bearing on that was the possible bias of those witnesses, traceable in part to their hostility to petitioner on account of the fact that she apparently had been on intimate terms with Bennett prior to his marriage.

There was no direct evidence that petitioner had stolen the coupons. There was, however, other evidence from which such an inference could be drawn. It assumed a place of considerable importance at the trial. And the alleged error in the charge relates to it.

Petitioner handled ration coupons which merchants deposited with the bank. The ration coupons were received by tellers for deposit. After the coupons had been received for deposit by the tellers, petitioner checked the

deposits against the deposit slips and kept the rationing records. After counting the coupons and making the entries, she placed the coupons in a steel file which was locked. The keys to the file were kept in her desk, which was not locked. At regular intervals petitioner would take the accumulated ration coupons and box them for transmission to the Office of Price Administration. She would also prepare a form showing the contents of the box. In preparing this form, she would not recount the coupons but would compile the figures from the daily records which had been prepared as the coupons were deposited. On September 5, 1944, petitioner prepared a box for transmission to the Office of Price Administration, sealed it, and turned it over to the cashier of the bank. The accompanying form represented on its face that the box contained gasoline ration coupons for some 156,000 gallons. Its examination showed a shortage of some 37,000 gallons. Petitioner had a good record at the bank. The accounts which she kept were kept well and accurately. She was not the only one who had access to the coupons in the steel file. At least four other employees of the bank had equal access to that file. One of these was a lady with whom, according to petitioner's testimony, Bennett had a rather intimate acquaintance.

The case against petitioner was therefore a close one. Plainly there was sufficient evidence for submission of the case to the jury. But since one of four other persons might have purloined the coupons, reasonable doubt as to petitioner's guilt might readily be inferred.

It was against this background that the trial judge charged the jury:

"Who would have a motive to steal them? Did she take these stamps? You have a right to consider that. She is not charged with stealing, but with conspiracy to do all these things, and you have a right

to consider whether she did steal them, on the question of intent. *Did she steal them? Who did if she didn't? You are to decide that.*" (Italics added.)

Counsel excepted to the charge on the ground that it was not "the jury's duty to find out who did steal the stamps." No modification of the charge was made.

We assume that the charge might not be misleading or confusing to lawyers. But the probabilities of confusion to a jury are so likely (cf. *Shepard* v. *United States*, 290 U. S. 96, 104) that we conclude that the charge was prejudicially erroneous.

Instructions to acquit, if there was reasonable doubt as to petitioner's guilt, were given in other parts of the charge. Those were general instructions. They would be adequate, standing alone. But on the crucial issue of the trial—whether petitioner or one of four other persons stole the coupons from the bank—no such qualification was made; and the question was so put as to suggest a different standard of guilt. As stated by Judge Frank in his dissenting opinion below: "Literally interpreted, the judge's charge told them that this was not sufficient to justify acquittal, for it was their 'duty' (a) to decide that appellant committed the theft unless (b) they decided that some other specific person did. So interpreted, this charge erred by putting on appellant the burden of proving her innocence by proving the identity of some other person as the thief." 152 F. 2d, p. 348. Or to put the matter another way, the instruction may be read as telling the jurors that, if petitioner by her testimony had not convinced them that someone else had stolen the ration coupons, she must have done so. So read, the instruction sounds more like comment of a zealous prosecutor rather than an instruction by a judge who has special responsibilities for assuring fair trials of those accused of crime. See *Quercia* v. *United States*, 289 U. S. 466, 469.

The "harmless error" statute [3] (Judicial Code § 269, 28 U. S. C. § 391) means that a criminal appeal should not be turned into a quest for error. It does not mean that portions of the charge are to be read in isolation to the full charge and magnified out of all proportion to their likely importance at the trial. *Boyd* v. *United States,* 271 U. S. 104, 107. Yet as stated in *McCandless* v. *United States,* 298 U. S. 342, 347–348, "an erroneous ruling which relates to the substantial rights of a party is ground for reversal unless it *affirmatively* appears from the whole record that it was not prejudicial." It seems plain that the inflection or tone of voice used in giving the challenged instruction could make it highly damaging. And in any event the probabilities of confusion in the minds of the jurors seem so great, and the charge was so important to the vital issue in the case, that we conclude that prejudicial error was committed. We certainly cannot say from a review of the whole record that lack of prejudice affirmatively appears. While there was sufficient evidence for the jury, the case against petitioner was not open and shut. Since the scales were quite evenly balanced, we feel that the jury might have been influenced by the erroneous charge. Hence we cannot say it was not prejudicial and hence treat it as a minor aberration of trivial consequence. Nor is it enough for us to conclude that guilt may be deduced from the whole record.

---

[3] "On the hearing of any appeal, certiorari, or motion for a new trial, in any case, civil or criminal, the court shall give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties."

The Federal Rules of Criminal Procedure, effective March 21, 1946, provide that "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." Rule 52 (a). This is merely a restatement of existing law and effects no change in the "harmless error" rule.

Such a course would lead to serious intrusions on the historic functions of the jury under our system of government. See *Bollenbach* v. *United States,* 326 U. S. 607.

*Reversed.*

MR. JUSTICE JACKSON took no part in the consideration or decision of this case.

MR. JUSTICE BLACK, dissenting.

The jury found this defendant guilty beyond a reasonable doubt after the trial judge had charged that: "A defendant is not required to establish his innocence but the Government must establish guilt beyond a reasonable doubt. If the facts and circumstances surrounding the case are as consistent with innocence as with guilt, he is not guilty." Six other times the judge explicitly charged the jury to the same effect: The defendant's innocence is presumed; she need not prove it; the burden is on the Government to prove her guilt beyond a reasonable doubt. Yet the Court now reverses on the ground that the jury might conceivably have taken three sentences in the trial judge's charge to mean that the defendant must prove innocence, which conceivably might have led the jury to believe that the court might have intended to withdraw his seven explicit instructions to the contrary. The three sentences were: "Did she steal them? Who did if she didn't? You are to decide that." Instructions such as these as to who stole the coupons were necessary because of the petitioner's defense that somebody else had taken them. The trial judge was obviously telling the jury not to ignore the petitioner's defense. No reference was made to burden of proof and no ordinary juror, unskilled in legal dialectics, would have suspected the latent ambiguity which the Court has discovered. Of course, hypercritical

scrutiny of each word and sentence in every charge when considered alone would always reveal dual meanings. The sentences here in question, like the sentences in every charge, should be given a common sense interpretation in their relationship to all instructions and the issues raised. When so considered, it is impossible for me to believe that the jury was confused as to burden of proof. Seven correct explicit instructions should not be considered neutralized by legalistic inferences established by purely formal analysis.

MR. JUSTICE REED and MR. JUSTICE BURTON join in this dissent.