## UNITED STATES v. PLATT.

### No. 212, Docket 21628.

United States Court of Appeals
Second Circuit.

Argued April 3, 1950.

Decided April 24, 1950.

George Landesman, New York City, Charles Sonnenreich, New York City, on the brief, for Daniel Platt, defendant-appellant.

Irving H. Saypol, United States Attorney, New York City, Bruno Schachner, New York City, and Edward E. Rigney, Assistant United States Attorney, New York City, of counsel, for the United States, plaintiff-appellee.

Before AUGUSTUS N. HAND, CLARK and FRANK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The defendant was convicted, after a trial before a jury, of violating § 1341 of Title 18 of the United States Code, which so far as pertinent reads as follow:

"§ 1341. *Frauds and swindles*

"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, * * * for the purpose of executing such scheme or artifice or attempting so to do, * * * knowingly causes to be delivered by mail according to the direction thereon, * * * any * * * matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both." 18 U.S.C.A. § 1341.

All counts of the indictment under which the defendant was convicted are identical, except that they charge different mailings.

Each count alleges that the defendant devised a scheme and artifice to defraud in the sale of hot water heaters to be attached to cold water faucets; that these heaters were offered to the public by advertisements which stated that they gave "hot water when and where you want it, instantly" and that if purchasers were not completely satisfied the purchase price would be refunded upon the return of the hot water heater; and that it was a part of the scheme to defraud that the defendant would convert money sent for purchases without furnishing any merchandise in return.

The evidence in support of conviction was to the effect that the defendant was the president of Marvel Sales Corporation; that he opened a bank account on its behalf in the National Safety Bank and Trust Co. where he or Frank Schere, the vice-president, were authorized to sign for the company; that the defendant opened a second bank account in the Irving Trust Company where, under a corporate resolution, he alone was authorized to act for the corporation in banking transactions; also that he, as president of the Marvel Sales Corporation, directed a letter to the Postmaster at Grand Central Station authorizing the payment of money orders made out to the Marvel Sales Corporation either to himself or to one of two employees. There was also evidence that Platt controlled the corporation, arranged the advertising program, hired and discharged employees, signed the corporation checks, and paid its rent by such checks.

Twenty-two witnesses testified that when transmitting an order for a heater they sent either a check or a money order but never received any merchandise for their remittances, and that all their letters of inquiry addressed to Marvel Sales Corporation remained unanswered. Several of these letters of inquiry were registered letters delivery of which was established. There was proof that six of the money orders were cashed at the Post Office, and that sixteen payments—consisting of twelve checks and four money orders—were deposited in the bank accounts of the Marvel Sales Corporation upon receipt at its office.

Four witnesses testified that heaters which they received were unsatisfactory. Three of them said that they returned the heaters but obtained no refund. One said that he cast aside the heater as unsatisfactory without returning it.

The defendant asks for a reversal of the judgment against him because of alleged errors by the trial judge. The only one of these errors requiring any serious attention is found in a portion of the charge which we quote as follows:

"Jasper, the advertising agent for the defendant, testifying as a witness for the Government, described in some detail his relations with the defendant since, as I recall it, 1945. He said that prior to the launching of the Marvel Corporation * * * the defendant had been engaged in selling a heater similar to the one involved in the present case under the trade name 'The Kem Company,' and I think it is conceded that that company was not an incorporated company, but it was a name used by the defendant personally for the purpose of carrying on this business prior to the organization of the Marvel Sales Corporation. Jasper also testified that the heater sold by the Kem Company was advertised extensively throughout the United States. He told also about the advertising of the Marvel heater in newspapers and magazines throughout the country. He said that he dealt exclusively with the defendant in the preparation of the advertising and that all copy was approved by the defendant before being sent to the newspapers or magazines for printing. The general character of the advertising of the heater appears in the exhibits in evidence, which were identified either by Jasper or by other witnesses in the case.

"There is testimony also that the defendant was the president and the dominant official of the Marvel Sales Corporation during the period involved, that he opened the corporation's bank accounts and signed all checks, that he personally directed the affairs of the corporation, paid the rent of the office at 18 East 41st Street, and was actively engaged in the operation of the business. Now, under these circumstances, I charge you as a matter of law

that the defendant cannot shield himself behind the corporation."

The judge had previously given full instruction to the jury as to the proof required if the defendant was to be convicted for violation of the statute. These instructions were as follows:

"Under [the] statute there are two elements of the crime, namely, one, a scheme intended to defraud and second, an actual use of the United States Mails. A scheme ordinarily implies some degree of planning. It does not, however, require any formal action to make it effective. It may be shown by circumstances or inferences derived from proven facts. The particular kind of scheme denounced by the statute is one to defraud or for obtaining money or property by means of false or fraudulent representations or promises. There is, thus, included everything designed to defraud by representations as to the past or present or suggestions and promises as to the future. The significant fact is the intent and the purpose.

"A representation of fact may be shown to be false by proof that the fact was other than is represented.

"A promise stands, however, on a somewhat different footing. In order to prove its falsity it is necessary to show that the person making the promise did not mean or intend to perform or knew that he would not be able to perform, or that he had no intention or belief at all in the matter as to whether or not he would or could perform.

"In order to convict it must be shown by the Government that the alleged representations or promises were made by the defendant knowingly and intentionally, with intent to defraud. Intent involves a mental attitude, and it can rarely be shown except by inference. Intent is to be gathered mainly from the surrounding circumstance, the knowledge that the defendant is shown to have of what was being done and the natural inferences flowing therefrom. The statute also requires that for the purpose of executing the scheme the defendant cause to be delivered by mail according to the direction thereon the particular letter named in each one of the open counts. * * *"

The judge likewise told the jury the presumption of innocence would accompany the defendant throughout the trial and that in order to convict him there must be proof of guilt beyond a reasonable doubt. He also said: "The jury are the sole judges of the facts, of the credibility of the witnesses, and of the inferences to be derived from the facts."

When the judge said: "Now, under these circumstances I charge you as a matter of law that the defendant cannot shield himself behind the corporation," the jury could not have supposed that he was instructing it that the defendant could not shield himself behind the corporation because of evidence of control which the Government had introduced, even though the truth of that evidence was disputed by the defendant's witnesses. It seems clear that he was only charging that if the Government's proof of control and conduct of the business was believed, the mere existence of the corporation under which the defendant was operating would not protect him. Upon this assumption, which might be found to be warranted by the evidence, the charge was justified under the authorities. Redmond v. United States, 1 Cir., 8 F.2d 24; Taggart v. United States, 10 Cir., 63 F.2d 285.

Counsel for appellant further object to the comment of the judge when he allowed proof of the deposit of a money order for $5, which had been sent by one Christensen to purchase a heater, in the account of the Marvel Sales Corporation with the National Safety Bank and Trust Company. The evidence was objected to on the ground that the order was not payable to the defendant and did not bear his endorsement. When this objection was made, the court said: "Well, so what? He got the money on it, didn't he?" The money order had gone into a bank account on which Platt could draw checks for the corporation. Though the vice-president also had power to draw checks, the proof indicated that only Platt had ever exercised the power. The comment of the judge

merely indicated that the testimony was competent as showing control over the payment by a customer who had received no merchandise in return for his remittance. In other words, it tended to support the Government's theory that Platt controlled the corporation and must have had knowledge of the fraudulent acts committed through its instrumentality. It was within the province of the judge to make the remark in view of the evidence that had been introduced. In any event, such a passing comment indicating the judge's own views as to the effect of the evidence should not be regarded as reversible error.

█ The judge was correct in refusing to admit advertisements of heaters by Bloomingdale and Gimbel Bros. in New York newspapers. Such evidence would not meet the main charge of retaining payments and delivering no heaters, nor the further charge of delivering certain heaters which would not function, while keeping the customer's money.

█ In our opinion there were no errors by the trial judge. He left the question of fraudulent intent to the jury who returned a verdict against the defendant which was amply supported by the record.

Judgment affirmed.

FRANK, Circuit Judge (dissenting).

1. There were two chief issues of fact for the jury: (1) Did Marvel Sales Corporation do or fail to do certain acts? (2) Did defendant Platt so conduct himself with reference to that corporation that its conduct in effect was his? As to the second issue, the trial judge, after referring to evidence introduced by the government, said: "Now, under these circumstances, *I charge you as a matter of law that the defendant cannot shield himself behind the corporation.*"[1] To this statement defense counsel specifically objected,[2] but the judge did nothing to correct it.

"I charge you as a matter of law" are the stereotyped words a trial judge uses to withdraw an issue from a jury's consideration. Any juryman who had read the Handbook For Petit Jurors (serving in the federal courts) commonly distributed to prospective jurymen, would conclude that it was his sworn duty to decide the case in accordance with the "law" as "the judge declares it to be."[3] The prefatory words "under these circumstances" used by the judge here could not weaken, rather they would serve to confirm, the understanding by the jurors that the judge's purpose was to have them take as conclusive his statement that what the corporation did the defendant did, i. e., that the jurors, on this issue, were not to consider the credibility of the witnesses.

My colleagues read the judge's statement as if he had said, "If you believe the testimony to which I have referred, then I charge you as a matter of law, etc." But the significant fact is that he omitted that important if-clause. To assume that the jury read in the if-clause, as necessarily

1. Emphasis added.

2. He said: "Your Honor, the defendant takes exception to that part of the charge which charged the jury as a matter of law that the defendant and the Marvel Sales Corporation were an identity."

3. See A. Handbook For Petit Jurors Serving in the District Courts of the United States, prepared by the Administrative Office of the United States Courts, and published by authorization of the Judicial Conference of Senior Circuit Judges (1943), with a Foreword by former Chief Justice Stone, urging that "every prospective juror should read and reflect upon its advice."

The Handbook says (pp. 1, 11, 14, 26): "The jury's duty is to determine the facts of the case, and, in doing so, the jurors must apply the law of the case as the judge declares it to be * * *. The jury's oath is to decide the case 'upon the law and the evidence.' The *law* is what the judge declares the law to be * * *. The last word the jury hears before it retires to consider its verdict will be the law. That is as it should be. The last admonition to the jury should be a reminder of the juror's solemn oath, to decide the case according to the law and the evidence * * *. The jurors are not responsible for the law and it is their duty, as it is the duty of the judge, to make their decision on the basis of the law as it is. This law will be explained to them by the judge in his instructions."

implied, is to assume that the jurors recognized that the judge's unconditional statement, literally interpreted, was legally erroneous, and that, so recognizing, the jurors imported the language needed to avoid the error. I see no reason to ascribe such legal acumen to jurymen. Charges no more misleading have frequently been held to constitute reversible error. See, e. g., Bihn v. United States, 328 U.S. 633, 66 S.Ct. 1172, 90 L.Ed. 1485; Bollenbach v. United States, 326 U.S. 607, 612–614, 66 S.Ct. 402, 405, 90 L.Ed. 350; United States v. Crescent-Kelvan Co., 3 Cir., 164 F.2d 582, 588; cf. Sandals v. United States, 6 Cir., 213 F. 569, 576. As the Court said in the Bollenbach case, "A conviction ought not to rest on an equivocal direction to the jury on a basic issue," adding that it "would transfer to the jury the judge's function in giving the law" to say "that the lay jury will know enough to disregard the judge's bad law if in fact he misguides them."

2. If (as I think) the practical effect of the judge's statement was to withdraw this issue of fact from the jury, then of course the error was not cured by his further instructions as to burden of proof, intent, and that the "jury are the sole judges of the facts"; those further instructions applied to the fact-issues not withdrawn from the jury. See e. g., Bihn v. United States, 328 U.S. 633, 637, 66 S.Ct. 1172, 90 L.Ed. 1485.

3. The likelihood that the jurors thought that the judge had removed that fact-issue from their consideration is increased by his earlier remark, during the trial, with reference to the money-order deposited in one of the corporation's bank accounts: "Well, so what? He [the defendant, Platt] got the money on it, didn't he?" Now there was no proof that Platt did "get the money on it." The proof showed (a) that both Platt and Schere were empowered to draw on that account and that (b) Platt had drawn on it frequently; but (contrary to my colleagues' comment) there is not a syllable of proof that Schere had not also so drawn on that account. The judge's remark, however, in effect told the jury that whatever funds were received by the corporation must be regarded as having been received by Platt, regardless of who withdrew those funds—in other words, that Platt and the corporation were to be deemed identical.[4] The charge that "as a matter of law, etc." may well have rubbed that idea into the minds of the jurors.

4. There was no proof as to how much of the corporation's stock the defendant owned.