**UNITED STATES of America,**
Appellee,

v.

**Arthur William LADSON, Defendant-Appellant.**

**No. 372, Docket 25895.**

United States Court of Appeals
Second Circuit.

Argued May 3, 1961.

Decided Sept. 6, 1961.

James McKinley Rose, Jr., Asst. U. S. Atty., Southern District of New York, New York City (Robert M. Morgenthau, U. S. Atty., and Gerald Walpin, Asst. U. S. Atty., New York City, on the brief), for appellee.

L. Howard Payne, New York City (Anthony F. Marra, New York City, on the brief), for defendant-appellant.

Before LUMBARD, Chief Judge, MOORE, Circuit Judge, and STEEL,* District Judge.

LUMBARD, Chief Judge.

Arthur William Ladson was convicted of selling or facilitating the sale of heroin on March 7 and March 21, 1958, in violation of 21 U.S.C.A. §§ 173, 174, and of conspiracy to violate those sections during the early months of 1958 by entering into an agreement with one Au-

---

* Sitting by designation.

gustus Franks. Ladson was also indicted for a sale of narcotics on February 24, 1958, but was acquitted on this count. He was sentenced to seven years' imprisonment on each of the counts on which he was convicted, the sentences to run concurrently.

This appeal raises three questions. First, Ladson challenges the sufficiency of the evidence to support his conviction on each of the three counts. Second, he contends that admissions made by him to an Assistant United States Attorney on the morning following the evening of his arrest were used against him at trial in violation of the principle set forth in Mallory v. United States, 1957, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479, Upshaw v. United States, 1948, 335 U.S. 410, 69 S.Ct. 170, 93 L.Ed. 100, and McNabb v. United States, 1943, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819. Third, Ladson claims error in the trial judge's charge on the conspiracy count. We find all three contentions to be without merit.

## I. The Mallory Question

■ Ladson and Franks were arrested pursuant to a warrant at about 7:00 p. m. on Friday, April 18. They were both taken to the offices of the Bureau of Narcotics at 90 Church Street in New York City, where they were questioned by several agents before being taken to the Federal House of Detention on West Street somewhat after midnight. Ladson made incriminating admissions to the agents during the course of the evening, but their use at the trial is not here attacked.[1] He appeared before a United States Commissioner in the Courthouse at Foley Square at about noon on Saturday, but first he had been taken to the

office of Assistant United States Attorney Lunney in the same building, where he was questioned for about an hour beginning at 11:00 a. m. and made the statement the admissibility of which is here attacked. The statement in substance confessed to all the charges on which Ladson was ultimately convicted. Ladson testified that a commissioner had been in the building since 11:00 a. m. and now contends that delaying the hearing for one hour while a comissioner was available was "unnecessary" within the meaning of Rule 5(a) of the Federal Rules of Criminal Procedure and thus the confession should have been excluded.

■■ We hold that the admission of the statement was proper for two reasons. First, under the circumstances appearing from the record a delay of one hour for questioning by the Assistant was not unnecessary. Second, even if the delay were not justified by the facts before us, Ladson's failure to make a clear Mallory objection at trial bars his raising it here.

We find sufficient justification on this record for a delay in arraignment of one hour to permit Ladson to be questioned by the Assistant United States Attorney. The admissions Ladson made to the narcotics agents the evening before had not been put into written form. A delay of an hour or more for the purpose of reducing oral admissions to writing clearly does not violate Rule 5(a). United States v. Vita, 2 Cir., 1961, 294 F.2d 524; Metoyer v. United States, 1957, 102 U.S. App.D.C. 62, 250 F.2d 30. The brief questioning by the Assistant was similarly a proper means of confirming Lad-

---

1. Any Mallory objection to the use of these admissions would be doomed to failure, since there has been no claim that a commissioner was available at any time after 7:00 P. M., or indeed until 11:00 the next morning. If a commissioner is not available in regular course, detention is not "unnecessary" within the meaning of Rule 5(a) of the Federal Rules of Criminal Procedure, 18 U.S.C. and any

admissions made cannot be excluded under the Mallory doctrine. United States v. Vita, 2 Cir., 1961, 294 F.2d 524, note 1; Williams v. United States, 9 Cir., 1959, 273 F.2d 781, 798, certiorari denied, 1960, 362 U.S. 951, 80 S.Ct. 862, 4 L.Ed.2d 869; Porter v. United States, 1958, 103 U.S.App.D.C. 385, 258 F.2d 685, 692, certiorari denied, 1959, 360 U. S. 906, 79 S.Ct. 1289, 3 L.Ed.2d 1257.

son's confession and putting it into a more usable form.

 It is well established that not all confessions made between arrest and the commissioner's hearing are inadmissible. United States v. Mitchell, 1944, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140; Lockley v. United States, 1959, 106 U.S.App.D.C. 163, 270 F.2d 915; United States v. Hymowitz, 2 Cir., 1952, 196 F.2d 819. And, within reasonable limits, a chain of questioning need not be interrupted the very instant that it becomes appropriate and feasible to take the suspect before a commissioner. United States v. Vita, supra, at page 532 of 294 F.2d. This is so especially where, as in this case, the suspect is willing to talk. United States v. Leviton, 2 Cir., 1951, 193 F.2d 848, 852–855, certiorari denied 1952, 343 U.S. 946, 72 S.Ct. 860, 96 L.Ed. 1350. Although Ladson denied it at trial, the transcript of the interview by the Assistant indicated that Ladson was advised of his rights and stated that he understood them; there is no claim or evidence of any kind of coercion.

The rights of persons in custody must, of course, be protected by scrupulous observance of the rules that have been laid down for the police and prosecuting authorities. But "the duty enjoined upon arresting officers to arraign 'without unnecessary delay' indicates that the command does not call for mechanical or automatic obedience. Circumstances may justify a brief delay between arrest and arraignment * * *" Mallory v. United States, 1957, 354 U.S. 449, 455, 77 S.Ct. 1356, 1359, 1 L.Ed.2d 1479. Here, for purposes of Rule 5(a) the delay was for a single hour, and the time was used to check the defendant's pedigree and to confirm admissions which he had already made in part. The questioning was by the Assistant United States Attorney whose duty it was to determine what

charges should be made and to conduct the prosecution of those charges. It was entirely appropriate for him to seek a more elaborate statement upon which to proceed, in addition to seeking facts which would be relevant to the fixing of bail by the commissioner.

There are other reasons why it was reasonable and necessary for the Assistant to question Ladson. Ladson's accomplice Franks had just been questioned by him; Franks, whose answers do not appear from the record, might have implicated Ladson in offenses previously unknown to the police, or might have attempted, as he did at one stage of the trial, to show that his friend was innocent of the offenses charged. In either case, further questioning was advisable and justified. Still other reasons might have appeared had the Mallory issue been raised and had the trial judge then conducted the usual hearing to resolve the issue. As it was, the government never had occasion to call Mr. Lunney as a witness to give further or more detailed justification for the delay.

Thus we reach the alternative ground for denying Ladson's Mallory claim—the failure of his counsel to make an objection at a time when the necessary determination of fact could be made. Blackshear v. United States, 1958, 102 U.S.App.D.C. 289, 252 F.2d 853, certiorari denied, 1959, 359 U.S. 1004, 79 S.Ct. 1144, 3 L.Ed.2d 1033; Lawson v. United States, 1957, 101 U.S.App.D.C. 332, 248 F.2d 654, certiorari denied, 1958, 355 U.S. 963, 78 S.Ct. 552, 2 L.Ed.2d 537. Ladson's counsel moved on two occasions to have the confession excluded, but at neither time did he put his motion in such a form that either the trial judge or government counsel could be expected to regard it as a claim that the vice was the illegality of Ladson's detention.[2] On the first occasion, he argued that it

2. Although counsel for the defendant appears to have discussed the Mallory question after the verdict and sentence in the consideration of bail pending appeal, it was then too late for the trial judge to give any more consideration to the question than we can give it on this appeal.

was premature to admit the statement, "for there may be other evidence offered by the defendant in his defense, affirmatively, to establish that this statement or this exhibit was obtained by coercive measures" and was "not a voluntary statement of this defendant." To be sure, shortly before this motion was made, defense counsel mentioned the Mallory case in the sentence set forth in the margin,[3] but this purpose, although not clear, was definitely not to raise the objection that illegal detention voided Ladson's statement.

Ladson's first motion for exclusion was denied without prejudice, and was renewed, in the form of a motion to strike the statement, at the close of the government's case. Here counsel again argued involuntariness, and further that Ladson "had no complete understanding of the nature of the statement, and that it was taken before arraignment." But this colloquy followed immediately:

"The Court: Well, there is no bar that I know of to a statement taken before arraignment, is there, Mr. Kaye?

"Mr. Kaye: Well, there is a bar if you establish facts consistent that there was lack of due process of law in taking the statement.

"The Court: Yes, I grant you.

"Mr. Kaye: Because in Mallory against the United States—

"The Court: You don't have to argue that.

"Mr. Kaye: That is my argument that is posed here. Here is a man that is taken to a United States Attorney's office immediately upon his apprehension and arrest, and he is not arraigned until the next morning at 10:30. [sic] In the meantime, this statement is extracted, I say, from him under a promise made to Franks and relayed to this defendant, the promise of cooperation. Whether there was a promise of doing something for consideration in return there, that may be sufficient or not sufficient, but I say here was an inducement given to the defendant to make the statement, and the statement was taken from a man who doesn't understand it. * * * I say that, all put together, spells out the implication that this was not the type of statement that could be considered or professed to be a voluntary statement taken from a defendant.

"The Court: Your motion is denied."

In net result, counsel's remarks on this occasion no more raised the illegality of Ladson's detention than did his first motion to exclude the statement. The closest counsel came to stating a Mallory question was in his contention, immediately dropped, that any pre-arraignment confession is inadmissible. As we have noted earlier, so sweeping a rule is indefensible on both reason and authority; the issue of the justification for the delay—which was not raised by defense counsel—must be gone into. Ladson's counsel offered the government no opportunity to do so as no inquiry was required on his argument which was so patently without substance. Indeed, at this stage of the proceedings no exclusion on Mallory grounds would have been possible, since there was still no evidence to indicate that a commissioner, or a judge, was available at any time prior to the actual hearing at noon. The only indication that a commissioner was available at 11:-00 a. m. was in the later testimony of the defendant Ladson. If proper objections had been made at trial, the government might well have been able to offer evidence to the contrary. Since Ladson's

3. "Mr. Kaye: If you read Mallory versus United States, 334 [354] U. S., and if you read the McNab [sic] decision, you will see that the statements taken before the arraignment are always subject to questioning, always, and therefore I have a right to determine now, through this witness, that the statement of Ladson was taken contemporary with the proposal made to Franks."

statement must have been hearsay as he was occupied with the agents and the Assistant at 11:00 o'clock, we should not now assume that a hearing would have been possible before noon.

## II. The Sufficiency of the Evidence

We find sufficient evidence to support the jury's findings on all three counts of the conviction, that on March 7 and 21, 1958, Ladson sold, or knowingly facilitated the sale of, heroin, and that at those times and before he conspired with Augustus Franks to do so.[4] In addition to Ladson's admissions to the Assistant United States Attorney, there was believable testimony by Franks—although he wavered in his statements as to Ladson's role—and by Agent William Newkirk, to establish the proposition that Ladson, using Franks as a runner, controlled the two sales in question.

It is undisputed that on March 7, Agent Newkirk, posing as a purveyor of drugs under the style of "Willie from Philly," bought three ounces of heroin from Franks for $390. He had made a similar purchase from Franks on February 24, and pursuant to the instructions given him by Franks at that time he had renewed contact by calling the public telephone in Ladson's luncheonette in the Bronx. When told that "Gus" (Franks) was not there, he then, as instructed, asked for "Willie." "Willie"—who Ladson on the evening of his arrest admitted was himself—said that he was aware of the earlier transaction,[5] and when the agent told him that he was interested in making another purchase, told him where Gus could be found. According to the agent's testimony "Willie" said, "You go down there and you will see Gus, and Gus will take care of you." The agent made contact with Gus, but in the course of the negotiation a dispute arose about the price. It was necessary to call "Willie" to settle the matter; although "Willie" would not agree to lower the

price, he did say that with respect to advance payment whatever the agent and Gus agreed upon "will be satisfactory with me," and guaranteed delivery by 5:00 p. m. Franks testified that after the agreement was made, when he went to pick up the merchandise, Ladson found him a room where he helped him dilute the heroin to the desired strength. And after the sale was consummated, Franks gave the money to Ladson.

On March 21, Franks delivered another three ounces of heroin to the agent under similar circumstances. The agent again called "Willie," who, according to the agent's testimony said, "You do the same way that you did before." The sale was completed, and Franks again gave the money to Ladson.

■ This evidence, coupled with Ladson's admissions to the agents and to the Assistant United States Attorney after his arrest, was ample to support the convictions of Ladson for selling, or facilitating the sale of heroin on March 7 and March 21. See, e. g., Cellino v. United States, 9 Cir., 1960, 276 F.2d 941.

Although the proof required by 21 U.S.C.A. § 174 that Ladson knew that the heroin involved had been imported contrary to law presents a slightly more difficult problem, we find adequate evidence in the record to support the jury's findings to that effect. The statute makes unexplained possession a substitute for such proven knowledge, and we think that there was sufficient evidence of defendant's control over the drugs sold to support a finding of possession. Thus knowledge of illegal importation need not be proved.

Literal physical possession is not necessary to support this alternative provision of § 174. "Physical custody by an employee or agent whom one dominates, or whose actions one can control, is sufficient. * * *" United States v. Hernandez, 2 Cir., 1960, 290 F.2d 86, 90.

---

**4.** Franks was jointly indicted with Ladson, but pleaded guilty to all four counts charged, as well as another in which Ladson was not implicated.

**5.** The jury, however, acquitted Ladson of complicity in this February 24 sale.

We find ample evidence of Ladson's control over the sales made by Franks to support the jury's determination that he had "possession" within the meaning of § 174. There was testimony indicating that Ladson determined the conditions of payment and was in a position to guarantee delivery by a certain time. United States v. Santore, 2 Cir., 1960, 290 F.2d 51, 76 (in Banc) (Affirmance of Lo Piccolo's Count II conviction on ground that he had "supervision over the entire errand"); United States v. Malfi, 3 Cir., 264 F.2d 147, certiorari denied 1959, 361 U.S. 817, 80 S.Ct. 57, 4 L.Ed.2d 63; Cellino v. United States, 9 Cir., 1960, 276 F.2d 941; United States v. Maroy, 7 Cir., 1957, 248 F.2d 663, certiorari denied 1958, 355 U.S. 931, 78 S.Ct. 412, 2 L.Ed.2d 414.

### III. The Instructions on the Conspiracy Count

Ladson also now objects to the trial judge's failure to instruct the jury that they must find with respect to the conspiracy count, as well as the other counts, that Ladson had knowledge that the narcotics in question had been illegally imported or had possession thereof. For the necessity of such instructions, appellant cites our decision in United States v. Hernandez, 2 Cir., 1961, 290 F.2d 86.

■ We reject this claim of error because of appellant's failure to object to the charge at the time it was given, as is required by Federal Rule of Criminal Procedure 30. E.g., United States v. Cioffi, 2 Cir., 1958, 253 F.2d 494. In any event, appellant concedes that the possession charge on the counts dealing with substantive violations was more than adequate, and so the jury must inevitably have found Ladson's control over the narcotics transactions to be such as to amount to "possession" within the meaning of the statute.

We commend assigned counsel for the zeal and skill with which they have represented the appellant here.

Conviction affirmed.