John G. AHLSTEDT, Appellant,

v.

UNITED STATES of America, Appellee.

No. 19556.

United States Court of Appeals Fifth Circuit.

Feb. 27, 1963.

Rehearing Denied April 22, 1963.

Thomas C. MacDonald, Jr., Tampa, Fla., for appellant.

Thomas J. Hanlon, III, Asst. U. S. Atty., Edward F. Boardman, U. S. Atty., Tampa, Fla., for appellee.

Before BROWN, GEWIN, and BELL, Circuit Judges.

GRIFFIN B. BELL, Circuit Judge.

This appeal is from a judgment of conviction entered on a jury verdict under a three count indictment.

The first count charged appellant, John Levay and Joseph P. Patrinostro with forging and causing to be forged the signatures of a referee and trustee in bankruptcy on a check in the amount of $2,750, and concurrring in the use of the forged signatures for the purpose of authenticating the check in violation of 18 U.S.C.A. §§ 2 and 505. The second count made the same charge with reference to a check in the amount of $96,977.66. The third count charged a violation of 18 U.S.C.A. §§ 2 and 656 in that appellant and Levay aided and abetted Patrinostro in embezzling and misapplying funds of his employer, International Bank of Tampa.

Appellant was tried alone although jointly indicted with Levay and Patrinostro. Levay had not been tried due to illness, and Patrinostro had entered a plea of guilty and was serving the sentence entered on the plea at the time of trial.

The evidence demonstrated, through the testimony of Patrinostro, that Levay and Patrinostro were acquainted, as were Levay and appellant. Patrinostro and appellant were not acquainted until they and Levay held a meeting at the home of Levay, at which time they were introduced by Levay The three of them formulated a plan to forge the signatures of the referee and trustee to checks so as to withdraw funds from the account of the trustee at the bank where

Patrinostro was employed. He had selected the account as being fairly inactive. The former Mrs. Patrinostro was present at this meeting and on the trial testified that appellant looked like the man that she met there. Mrs. Levay was also present but neither she nor her husband testified.

Levay and Patrinostro met again in the home of Levay where Patrinostro forged the signatures on the two checks involved by tracing the bona fide signatures of the referee and trustee contained on a cancelled check withdrawn by him from the bank file. The forged checks were given to Levay. The proceeds of the check in the amount of $2,-750 was to cover the expenses of appellant. However, Patrinostro admitted that he was paid $600 from the proceeds of it.

Appellant was to pose as Jon P. Gallager in passing the checks. Patrinostro in his strategic position of bookkeeper at the bank where he had the trustee account in charge would approve the checks presented by appellant in his role as Gallager.

The smaller check was presented to a teller at the bank by a man claiming to be Jon P. Gallager who identified himself by a Florida driver's license issued in that name. He was directed to have the check approved by the bookkeeper and it was approved by Patrinostro who testified that it was handed to him for approval by appellant. The teller then cashed it after concluding from a comparison that the endorsement was the same as the signature on the driver's license. She could not identify appellant. It had been some six years since the event transpired.

The larger check was taken to St. Petersburg for deposit in an account opened in the First National Bank of that city by Jon P. Gallager. He was told that he could not draw on the account for three days, and in the meantime the wrongdoing was discovered in the Tampa bank, though not the wrongdoers. Payment was stopped and no withdrawals were made in the St. Petersburg bank on the account. Gallager was positively identified as being appellant by the employee of the St. Petersburg bank who opened the account. She had occasion to see him again when he attempted to draw on the account. He was also identified as looking like appellant by the head teller from whom Gallager sought approval of a withdrawal on the account two days after it was opened.

William Andrew Irvin, a Federal prisoner, testified that he was in jail in Florida with appellant who disclosed to him in a general way his association with Levay and Patrinostro, and the forging and passing of the checks here involved.

The application of Gallager for the Florida driver's license was introduced. Under the Florida law obtaining in connection with new applications, the license number of the Florida resident who must accompany the applicant is listed. The number was 558415 and proof was offered to show this to be the number of the Florida license issued to John Levay for the year 1956. The proof was in the form of a State of Virginia traffic citation issued to Levay which in turn was sent to the Florida Highway Patrol by the State of Virginia, and which was produced from and offered by the custodian of the records of the Florida Highway Patrol. The custodian testified that it came from the file on Levay. It indicated that Levay was the holder of a Florida license bearing that number in 1956 and thus connected Levay and Gallager. The citation introduced was in the form of a photostat.

The Florida driver's license application of Jack Ahlstedt, a name used by appellant according to the evidence, was also introduced. It was not shown precisely that it was the application of appellant. Both this application and the Gallager application contained a description of the applicant and the jury thus had before it in this form such similarities as were reflected. The applicant in each case was a white male, with brown hair and brown eyes, six feet two inches in height and weighing two

hundred pounds. The dissimilarities were that "Ahlstedt" was an electrician born September 9, 1909, while "Gallager" was an engineer born June 21, 1909.

In addition, a handwriting expert gave it as his opinion that the endorsements of Gallager on the two checks were made by the same person signing the application for a driver's license as Gallager.

The admission of the photostat of the Virginia traffic citation is assigned as error as having been both irrelevant and in violation of the best evidence rule. The admission of the driver's license application of Gallager is also assigned as error as not having been shown to be connected with appellant.

The other assignments of error have to do with a comment made by the trial court in the presence of the jury during the course of the trial, and because the trial court allegedly required counsel for appellant during the trial to expressly inform the jury that appellant would not testify.

■ These latter assignments of error are patently without merit. The comment by the court that: "Of course, his being here in court is evidence of something going wrong." had reference to Patrinostro and not appellant. Patrinostro was on the stand and this comment was made in a colloquoy with counsel for appellant. It did not give rise to the slightest objection, or even comment at the time and it is clear beyond peradventure that the statement was not in reference to appellant and in no way prejudiced him.

■ Nor did the trial court require counsel for appellant to expressly inform the jury that appellant would not testify. The jury was retired at the close of the government's case in order that counsel for appellant could argue a motion for acquittal. Upon it being denied, counsel sought and was granted a recess so that he might consult with appellant regarding whether or not appellant would testify. After consultation, counsel informed the court that appellant would not testify and that the defense would have no witnesses. The jury was still out of the room and the court stated that this announcement would have to be made before the jury. It is apparent that the court meant only that defense counsel should announce in open court before the jury that the defense rested or something connoting that end. When the trial was resumed the next morning the court inquired of counsel if he had an announcement to make as to proceeding with the case. Counsel responded as follows: "Yes. If your honor please, the defendant is not going to take the stand and we do not have other witnesses. Therefore, the defense rests." This mere happenstance, of no moment whatsoever at the time it occurred and not the subject of objection, is not plain error, if error at all, requiring that we invoke Rule 52(b), Fed.R.Crim.Proc.[1]

■ Exhibit 11, the application of Jon P. Gallager for a driver's license, was connected to appellant by the testimony of the witnesses that appellant posed as Gallager, and by the further testimony of Patrinostro that appellant stated at the time of his meeting with appellant and Levay at the home of Levay that he, appellant, would use the name of Jon P. Gallager. This was sufficient to carry this exhibit to the jury.

The serious question presented by this appeal is whether the Virginia traffic citation should have been admitted. It was objected to on the basis that it was not the original but apparently a photostat, and on the further ground that it was irrelevant. There was no objection as to authenticity. It unquestionably was relevant to the issue of whether appellant and Gallager were one and the same, and in view of the testimony to this effect, and that concerning the relationship between Levay and appellant. It was a circumstance tending to connect Patrinostro, Levay, and appellant and to tie appellant in as the person using the name of Jon P. Gallager.

1. Counsel on appeal was not trial counsel.

■ Whether the photostat should have been admitted in lieu of the original is another matter, bringing the best evidence rule into focus. The testimony of the Florida custodian of the record was that it had been received from Virginia, kept in the regular course of business, and produced from the file of Levay. No effort whatever was made to account for the original, or to show why it was necessary to introduce a photostat of the original. We hold that its admission was error. See Sebree v. Dorr, 1824, 9 Wheat. 558, 561, 6 L.Ed. 160; Williamson v. United States, 5 Cir., 1960, 272 F.2d 495, cert. den., 362 U.S. 920, 80 S.Ct. 672, 4 L.Ed.2d 740; 32 C.J.S. Evidence, §§ 777, 778, pp. 701–704; and 4 Fed.Prac. and Procedure, Rules Edition, Barron, § 2173, p. 200, for statement and application of the rule.

But having held this to be error we must next determine if it was harmless. 28 U.S.C.A. § 2111 [2] provides:

"On the hearing of any appeal or writ of certiorari in any case, the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties."

■ While language has occasionally cast this in terms of a reversal unless nonprejudicial effect "affirmatively" appears,[3] the Supreme Court has pointed out in Kotteakos v. United States, 1946, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557, that in criminal cases the question is what effect the error had or reasonably may be taken to have had upon the decision of the jury. That decision teaches that an appellate court must determine what the error meant to the jury in relation to all else that happened and:

"If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and judgment should stand, except perhaps where the departure is from a constitutional norm or a specific command of Congress. * * * But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand."

We test the rights of appellant by the rule of Kotteakos, and in so doing conclude that the error was harmless. Harlow v. United States, 5 Cir., 1962, 301 F.2d 361. The traffic citation went to connect Gallager with Levay. The role of Levay was that of a catalyst. He brought appellant and Patrinostro together. Thereafter the two of them were the active participants. Patrinostro told of his own role. That of appellant was described by Patrinostro and his former wife, two bank employees in connection with the larger check, and by a fellow prisoner. This left little doubt that appellant played the part of Gallager. The connection of Gallager and Levay through tying the number on the traffic

---

2. The successor statute in part to former § 269 of the Judicial Code, 28 U.S.C.A. § 391 (1940) which was repealed by the Judicial Code Revision Act of 1948. Rule 61 of the Fed.R.Civ.P. and Rule 52(a) of the Fed.R.Crim.P. require the same test in the District Courts. See 7 Moore's Federal Practice, pp. 1001–1005.

3. " * * * an erroneous ruling which relates to the substantial rights of a party is ground for reversal unless it *affirmatively* appears from the whole record that it was not prejudicial."
   McCandless v. United States, 1936, 298 U.S. 342, 56 S.Ct. 764, 80 L.Ed. 1205 and Bihn v. United States, 1946, 328 U.S. 633, 66 S.Ct. 1172, 90 L.Ed. 1484.

citation to the license number of Levay on the license application of Gallager was a minor circumstance among several major factors strongly indicating guilt. We do not think that the traffic citation was harmful when viewed in relation to the whole case, or that it substantially influenced the verdict.

Thus having found no prejudicial error on a careful consideration of the errors assigned and the whole record, we AFFIRM the judgment of conviction.