**UNITED STATES of America,**
**Appellee,**

v.

**Maximo DEL LLANO, Defendant-Appellant.**

**No. 477, Docket 29570.**

United States Court of Appeals
Second Circuit.

Argued May 6, 1965.

Submitted in banc to this court
May 26, 1965.

Decided Dec. 22, 1965.

J. Joseph Smith, Circuit Judge, dissented.

Samuel Saline, New York City, for defendant-appellant.

R. Harcourt Dodds, Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty., Southern Dist. of New York, New York City, on the brief, David M. Dorsen, Asst. U. S. Atty., of counsel), for appellee.

Before LUMBARD, Chief Judge, and WATERMAN, MOORE, FRIENDLY, SMITH, KAUFMAN, HAYS and ANDERSON, Circuit Judges.

MOORE, Circuit Judge (with whom Chief Judge LUMBARD and Judges FRIENDLY, KAUFMAN and HAYS concur, Judge ANDERSON concurs in the result, Judge WATERMAN concurs in the result in a separate opinion, and Judge SMITH dissents in a separate opinion).

This appeal was argued originally before a panel of this court. Before decision, the active circuit judges, *sua sponte* on May 26, 1965, ordered *in banc* consideration of this case and six other cases which involve related questions of importance in the field of criminal law.

Maximo Del Llano was indicted on two counts for receiving, concealing, selling, etc., cocaine on March 19th and March 24th, 1964, in violation of 21 U.S.C.A. §§ 173, 174, and on two counts for selling cocaine without an order form in violation of 26 U.S.C. §§ 4705(a), 7237(b). The two sales were made to narcotics agent Barry J. Quinones on March 19th and March 24th, 1964. Del Llano was arrested in early June 1964 and about two weeks later was indicted.

The non-jury trial began on July 20, 1964. The trial court found Del Llano guilty on all four counts, concluding that Del Llano had actively promoted the sales in question. The written findings accepted the substance of the agents' testimony, although no mention was made of Del Llano's alleged admissions of guilt. Del Llano's testimony apparently was not credited. No motions for a new trial were made on the grounds raised now on appeal, nor on any other grounds.

The Government presented its case through the testimony of agent Quinones, who described his and Del Llano's role in the transactions. His testimony was corroborated in considerable part by that of agent Durham, who had been surveilling some of the events on both days. After stipulating that a chemist would provide the necessary technical findings, the Government rested its case.

Del Llano testified on his own behalf and gave a version of the events which conflicted with the agents' testimony. Among the inconsistencies was testimony (on direct) by Del Llano that he had not seen Quinones after March 19th. On cross-examination, Del Llano repeated this assertion and added that he had never talked to Quinones about narcotics. The defense then recalled agent Quinones as its witness (defense counsel had earlier reserved the right to recall him as part of the defense's direct case) and attempted to impeach his (Quinones') testimony. On cross-examination, the Government asked Quinones whether he had had any conversation with Del Llano on the date when he was arrested in June, and Quinones said that he had.

Since the determination of the issues on this appeal depends upon the relatively few questions and answers on Quinones' cross-examination, they are set forth in full:

"Q. Mr. Quinones, did you have any conversation with Maximo Del Llano on the date of his arrest, June 3, 1964?

"A. Yes, I did.

"Q. Was that conversation concerning the events of March 19th or March 24th, 1964?

"A. That is correct, sir.

"Q. Will you please tell the Court in substance what he had said concerning those dates?

"A. I asked him if he recognized me and he said he did.

I then asked him if he had remembered what had occurred between us and he said he did.

He then went on to explain that although he had given me the narcotics he himself had realized very little from it at the time of the transaction and that actually he was doing it because he was hard up and he needed the money. I then asked him if he wanted to cooperate with the government.

He said he did not. He preferred to do his time and not become a rat and turn anybody in."

On re-direct examination, defense counsel developed further facts, namely, that the conversation with defendant was on the morning he was arrested; that Quinones told defendant that "Anything he said to me [Quinones] could be used against him [Del Llano]; that he had a right not to say anything," and that Quinones did not tell him that he had a right to consult an attorney. No notes or memoranda were made of this conversation which occurred when defendant was brought in after having been arrested on the street. The time of the arrest was not fixed with stopwatch accuracy. The arrest was made by agents Durham, Mangiarcini and Mendelsohn; "It was early in the morning; it must have been about nine or ten o'clock." The place was the corner of 134th Street and Broadway. Quinones first saw defendant on that date and no later than 10:30 to 11:00 A.M. The Headquarters of the Bureau of Narcotics is located at 90 Church Street, a substantial distance from 134th Street. The Quinones-Del Llano conversation must have occurred, therefore, immediately upon Del Llano's arrival, i. e., "As soon as they brought him in."

From the record, several significant facts stand out clearly. The warning concerning defendant's right to remain silent is not disputed. Quinones, having been the purchaser on March 19th and 24th, inquired as to whether defendant recognized him and upon receiving an affirmative answer asked him if he remembered what had occurred between them. There is no indication that an interrogation was being conducted in the

sense of trying to extract a confession. Although defendant was told that anything he said could be used against him, he chose to give his explanation undoubtedly to show that he needed the money and that he benefited little from the delivery of narcotics to Quinones.

In practically all narcotics cases, it has been revealed that the vendors are not lone operators. The vendor is usually the last link in a chain of importers, wholesalers and other suppliers. Proper enforcement of the narcotics laws requires that as much information as possible be obtained from the available sources. After giving Del Llano the option to remain silent and advising him of the possible use against him of anything he might say, the Government not only had a right but was under a duty to pursue its factual investigation. The opportunity to cooperate given to Del Llano might well have been of material benefit to him as well as to the Government. Quinones, having been the actual purchaser on two occasions, was the most logical agent to pursue the inquiry. Questioning by Quinones, who could refute any denial of the sales, was the kind of confrontation which was most likely to produce a response which would assist the government's investigation of the case and the situation which it presented. Furthermore Del Llano's election to limit his voluntary remarks to stating his reason (need for money) for making the sale and his refusal to make a further statement which might implicate others show convincingly that he was under no pressure from governmental interrogators.

This court has recently decided that conversations with, and inculpatory statements by, a defendant shortly after arrest are admissible. United States v. Cone, 354 F.2d 119, 2 Cir., November 22, 1965; United States v. Robinson, 2 Cir., 354 F.2d 109, November 22, 1965. In

Cone, supra, the allegedly inculpatory statement was made after arrest and no warning of any right to remain silent had been given. The suspect in each of those cases was questioned in a noncoercive setting at that early stage of the proceedings when the police were legitimately exploring the many aspects (almost invariably present—or potentially so—in narcotics cases) of the offense and not seeking merely to make a strong case against the particular suspect the stronger by extracting a confession from him. Cf. United States v. Middleton, 344 F.2d 78 (2 Cir., 1965). And certainly the conversation between Quinones and Del Llano was as "casual and noncoercive" as in Cone and Robinson, supra, if not more so. As we said in that case, "That Robinson voluntarily chose to answer and thereby incriminate himself does not make his answer *per se* inadmissible."

However, even if the conversation between Quinones and Del Llano were excludable, no objection was taken thereto on the trial. The reasons requiring that objections be made have been set forth fully in United States v. Indiviglio, 352 F.2d 276, 2 Cir., October 28, 1965. Suffice it to say that few rules in our trial practice are more longstanding and universally accepted than the one that evidence offered by a party will be admitted, though it be potentially excludable, unless an objection is made and the grounds of the objection are stated. More briefly, "a rule of evidence not invoked is waived." 1 Wigmore, Evidence § 18, at 321 (3d ed. 1940). A trial court may, of course, exclude evidence on its own motion even before any objection has been made, but if an issue as to admissibility is not raised at trial, it usually may not be raised on appeal.

Had an objection been made,[1] the proponent of evidence might well have de-

1. An objection could have been made on the grounds stated in Escobedo v. United States, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 because that case had been decided on June 22, 1964 and the trial here took place on July 20, 21, 1964.

Furthermore, if defense counsel believed that the admission of Quinones' answer constituted error, this position could have been asserted on August 7th, 1964, at the time the trial court placed his findings and conclusion in the record.

cided to forego making any use of it, relying instead upon the other evidence in the case. See Taylor v. Baltimore & O. R. R., 344 F.2d 281, 282, 287–288 (2d Cir. 1965) (No. 309), cert. denied, 86 U.S. 72 (1965). Even if a timely objection was not or could not have been made, a motion to strike or a request for a limiting instruction could have served substantially the same purpose. But though "objections are not insurance against an unfavorable result [they] must ordinarily be raised while there is still time to rectify the asserted error." United States v. Woodner, 317 F.2d 649, 651–652 (2d Cir.), cert. denied, 375 U.S. 903, 84 S.Ct. 192, 11 L.Ed.2d 144 (1963); Bouchard v. United States, 344 F.2d 872, 875 (9th Cir. 1965).

■ Recognizing this state of the law, appellant suggests in his reply brief that we exercise our power to notice "plain errors or defects affecting substantial rights * * * although they were not brought to the attention of the trial court." Fed.R.Crim.P. 52(b). Rule 52, however, was intended to be simply a restatement of previously existing law in this area. See Bihn v. United States, 328 U.S. 633, 638 n. 3, 66 S.Ct. 1172, 90 L.Ed. 1485 (1946). See generally United States v. Atkinson, 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936). Furthermore, the use of Del Llano's statement as to his reason for his participation had no tendency to produce an improper result. The words "plain errors" and "substantial rights" are not self-defining and cannot be considered in vacuo apart from all the facts and circumstances presented in each specific case. A review of the entire record here does not lead us to the conclusion that such errors affecting substantial rights exist.

In view of the position which we take as to the admissibility of the Quinones-Del Llano conversation and the effect of the failure to take any objection thereto, it is unnecessary to pass upon the question as to the extent, if at all, that prior inconsistent statements may be introduced after a defendant has offered testimony in his own defense. A resolution of the question whether such a defendant should be allowed to "provide himself with a shield against contradiction of his untruths * * *" (Mr. Justice Frankfurter in Walder v. United States, 347 U.S. 62, 65, 74 S.Ct. 354, 356, 98 L.Ed. 503 (1954)) is not required to reach the conclusion that the conviction should be affirmed.

■ Appellant's arguments that the evidence in question should not have been received because (1) there was no proper foundation for its reception; and (2) it was obtained in the course of an unnecessary delay in arraignment are without merit. As to the asserted lack of foundation, assuming this was error at all, see McCormick, Evidence, § 37 (1954), a proper objection stating this ground would have provided an opportunity to cure any such defect. As for the claimed violation of Fed.R.Crim.P. 5(a), the failure to object is again decisive. See United States v. Torres, 343 F.2d 750, 752 (2d Cir. 1965); United States v. Ladson, 294 F.2d 535, 538–539 (2d Cir. 1961), cert. denied, 369 U.S. 824, 82 S.Ct. 840, 7 L.Ed.2d 789 (1962).

Judgment affirmed.

WATERMAN, Circuit Judge (concurring).

I concur in the result the in banc court has reached, but only in the result.

J. JOSEPH SMITH, Circuit Judge (dissenting).

I dissent. For the reasons given in my dissents in United States v. Cone, 2 Cir., 354 F.2d 119, and United States v. Robinson, 2 Cir., 354 F.2d 109, I would hold that the results of the interrogation of Del Llano by Quinones, after arrest, without counsel and without warning of right to counsel, were not admissible against Del Llano on trial. I would notice the error under Rule 52(b) even though first raised on appeal since it involves a constitutional claim and the trial followed the Escobedo decision by less than a month. I would reverse for new trial with the statements made under interrogation excluded.